138 F.3d 772
 46 ERC 1362, 40 Fed.R.Serv.3d 399, 28
Envtl. L. Rep. 21,020,
98 Cal. Daily Op. Serv. 1666,
98 Daily Journal D.A.R. 2299
 STATE OF CALIFORNIA, on Behalf of the CALIFORNIA DEPARTMENT
OF TOXIC SUBSTANCES CONTROL, Plaintiff-Appellee,
v.
Albert CAMPBELL, individually and as Trustee of the Victor
Muscat Testamentary Trusts and Executor of the Estate of
Victor Muscat; Charles Tackman, individually and as Trustee
of the Victor Muscat Testamentary Trusts and Executor of the
Estate of Victor Muscat, Defendants-Appellants,
Western Resources, Inc., Receiver of the Victor Muscat
Testamentary Trusts, Intervening Defendant.
 No. 93-16754.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Dec. 9, 1997.
Decided March 9, 1998.
 
 Sandra Goldberg, Deputy Attorney General, Oakland, California, for plaintiff-appellee.
 Dale C. Campbell, L. Burda Gilbert, Weintraub, Genshlea & Sproul, Sacramento, California, for defendants-appellants.
 Thomas H. Clarke, Jr., Susan H. Handelman, Ropers, Majeski, John & Bentley, Redwood City, California, for intervenor.
 Appeal from the United States District Court for the Eastern District of California; Garland E. Burrell, District Judge, Presiding. D.C. No. CV-93-00604 GEB.
 Before: BROWNING, PREGERSON, and HAWKINS, Circuit Judges.
 PREGERSON, Circuit Judge:
 
 
 1
 For almost twenty years, Victor Industries contaminated groundwater by dumping hazardous chemicals onto the ground at its manufacturing plant. The State of California sued the defendants under state environmental and nuisance law to require them to clean up the contaminated water. California also sought reimbursement from the defendants under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9601, et seq., for the money that California spent investigating the contamination.
 
 
 2
 Two of the defendants-Albert Campbell and Charles Tackman-appeal the district court's orders finding the defendants liable under CERCLA and California law. Campbell and Tackman also appeal the district court's injunction requiring the defendants to clean up the contaminated water.
 
 
 3
 Because we have no jurisdiction to review the district court's interlocutory order finding the defendants liable under CERCLA, we dismiss that portion of the appeal. We have jurisdiction over the remainder of the appeal under 28 U.S.C. § 1292(a)(1), and we affirm.
 
 BACKGROUND
 
 4
 Victor Muscat owned Victor Industries until his death in 1974. From 1958 to 1984, Victor Industries manufactured metal tubes and cans at a plant on 20th Street in Chico, California ("the 20th Street Property"). For almost twenty years, workers at the plant used trichloroethylene as a solvent and disposed of it by dumping it on the ground. Trichloroethylene is a hazardous substance that causes cancer.
 
 
 5
 During an inspection, the California Department of Toxic Substances Control ("the Department") noticed hazardous substances stored in a manner that suggested that the hazardous substances were being dumped at the 20th Street Property. The Department took several soil samples. An analysis of the samples indicated the presence of trichloroethylene and other hazardous chemicals in the soil.
 
 
 6
 Subsequent testing indicated that high concentrations of trichloroethylene and other hazardous substances were present not only in the soil but also in the groundwater at the 20th Street Property. The Department tested the groundwater in municipal and private wells that are located downgradient from the 20th Street Property and determined that trichloroethylene had contaminated that groundwater as well. One of the polluted wells was located at Stanley Park, a housing subdivision located about a mile downgradient from the 20th Street Property.
 
 
 7
 On behalf of the Department, the State of California filed a complaint in federal court to require the defendants to clean up the contamination and to recover the money that the Department had spent investigating the contamination. The complaint named as defendants the executors of Muscat's estate and the trustees of Muscat's testamentary trusts.[1]
 
 
 8
 California moved for summary adjudication of three of its six claims: a federal environmental claim under CERCLA, 42 U.S.C. § 9601, et seq.; a state public nuisance claim under California's common law; and a state environmental claim under California's Hazardous Substance Account Act, Cal. Health & Safety Code § 25300 et seq. Specifically, California argued that the defendants were liable as a matter of law for violating both CERCLA and the state laws. As a remedy for the state law violations, California requested a permanent injunction requiring the defendants to abate the public nuisance that the trichloroethylene contamination had caused.
 
 
 9
 In opposition to California's motion, the defendants argued that the trichloroethylene detected at Stanley Park and the other off-site locations did not come from the 20th Street Property. The culprit, the defendants argued, was property owned by Louisiana Pacific ("the Louisiana Pacific Property"), which is located about a half-mile downgradient from the 20th Street Property and about a half-mile upgradient from Stanley Park.
 
 
 10
 The district court granted California's motion in its entirety, and the defendants appealed.[2]
 
 STANDARDS OF REVIEW
 
 11
 We review grants of summary adjudication motions de novo. Amdahl Corp. v. Profit Freight Systems, Inc., 65 F.3d 144, 146 (9th Cir.1995). The district court's ability to grant an injunction is reviewed de novo, but the district court's exercise of that power is reviewed for abuse of discretion. Continental Airlines, Inc. v. Intra Brokers, Inc., 24 F.3d 1099, 1102 (9th Cir.1994).
 
 DISCUSSION
 
 12
 Under California law, those responsible for polluting groundwater can be held liable for creating a public nuisance and for violating California's environmental laws. See Carter v. Chotiner, 210 Cal. 288, 291, 291 P. 577 (1930) (polluted water is a public nuisance); Selma Pressure Treating Co., Inc. v. Osmose Wood Preserving Co., 221 Cal.App.3d 1601, 1616-20, 271 Cal.Rptr. 596 (1990) (any person who creates or helps create and maintain a nuisance is liable for its abatement and damages); Cal. Health & Safety Code § 25358.3 (those responsible for endangering the public's health or safety or the environment may have to take remedial action to protect the public and the environment). Under CERCLA, any person who owned or operated a facility when hazardous substances were disposed there is liable for the costs that the government incurs when it responds to the contamination. 42 U.S.C. § 9607(a) ("any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of ... shall be liable for ... all costs of removal and remedial action incurred by the United States Government or a State....").
 
 
 13
 The district court found that the defendants were liable under both California law and CERCLA and granted California's motion for summary adjudication. As a remedy for the defendants' violations of California law, the district court issued an injunction that requires the defendants to abate the nuisance caused by the trichloroethylene contamination.
 
 
 14
 The defendants argue that the summary adjudication was improper because they did not have enough time to discover facts that were necessary to oppose the motion and because California failed to meet the summary adjudication standards. The defendants also argue that the injunction was improper because it is too broad and because it unlawfully incorporates a document by reference.
 
 I. Jurisdiction
 
 15
 Before we address these issues on the merits, we must determine that we have jurisdiction to do so. As a general rule, federal courts of appeal have jurisdiction only over final decisions of the district courts. See 28 U.S.C. § 1291 (granting federal appellate courts "jurisdiction of appeals from all final decisions of the district courts"). A final decision is one that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." Catlin v. United States, 324 U.S. 229, 233, 65 S.Ct. 631, 633, 89 L.Ed. 911 (1945) (citing St. Louis I.M. & S.R.R. v. Southern Express Co., 108 U.S. 24, 28, 2 S.Ct. 6, 8, 27 L.Ed. 638 (1883)). Accordingly, an order that determines liability but not damages is not a final decision, In re Frontier Properties, Inc., 979 F.2d 1358, 1362 (9th Cir.1992); nor is an order that adjudicates less than all claims a final decision, Chacon v. Babcock, 640 F.2d 221, 222 (9th Cir.1981).
 
 
 16
 The orders that the appellants appeal are precisely such orders. The CERCLA order determined that the defendants were liable under CERCLA for the costs that California incurred while investigating the contamination at the 20th Street Property, but it did not determine what those costs were. The state-law order resolved the nuisance and endangerment-to-the environment claims, but left several other claims unresolved. Thus, unless the summary adjudication orders fall under an exception to the final judgment rule, we have no jurisdiction to hear them.
 
 A. Collateral Order Doctrine
 
 17
 The Supreme Court has recognized that " § 1291 permits appeals not only from a final decision by which a district court disassociates itself from a case, but also from a small category of decisions that, although they do not end the litigation, must nonetheless be considered 'final.' " Swint v. Chambers County Com'n, 514 U.S. 35, 42, 115 S.Ct. 1203, 1208, 131 L.Ed.2d 60 (1995) (citing Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 546, 69 S.Ct. 1221, 1225-26, 93 L.Ed. 1528 (1949)). This small category of decisions "includes only decisions that are conclusive, that resolve important questions separate from the merits, and that are effectively unreviewable on appeal from the final judgment in the underlying action." Id. (citing Cohen, 337 U.S. at 546, 69 S.Ct. at 1225-26).
 
 
 18
 The summary adjudication orders establishing the defendants' CERCLA and state law liability are not among this small category of decisions because they do not satisfy the last factor of the test: they are not effectively unreviewable after final judgment. As the Supreme Court explained in Swint, "an erroneous ruling on liability may be reviewed effectively on appeal from final judgment." Swint, 514 U.S. at 43, 115 S.Ct. at 1208. Accordingly, the orders granting California's summary adjudication motions are not appealable collateral orders.
 
 
 19
 B. Statutorily-Appealable Interlocutory Orders
 
 
 20
 In addition to final decisions and the small category of cases that must be considered final under the collateral order doctrine, federal appellate courts have jurisdiction over four types of interlocutory decisions. The courts of appeal can hear appeals from interlocutory orders granting, modifying, or dissolving injunctions; interlocutory orders appointing receivers or refusing orders to wind up receiverships; interlocutory orders determining the rights and liabilities of the parties to admiralty cases; and interlocutory orders that the district court certifies for immediate appeal because the orders are pivotal and debatable. See 28 U.S.C. § 1292.
 
 
 21
 The district court did not certify the CERCLA order or the state law order for immediate appeal, and neither order concerns receiverships or admiralty. Thus, to fall under the statutory provisions allowing immediate appeal of interlocutory orders, the summary adjudication orders must be orders "granting, continuing, modifying, refusing or dissolving injunctions." 28 U.S.C. § 1292(a)(1).
 
 
 22
 After finding the defendants liable for creating a public nuisance and violating California's environmental laws, the district court issued an injunction requiring the defendants to abate the public nuisance that the trichloroethylene contamination had caused. Although the district court found that the defendants were also liable for California's investigation costs under CERCLA, it did not issue an injunction that required the defendants to reimburse California. Thus, the injunction that the court issued concerned the defendants' liability under state nuisance and environmental laws, not their liability under CERCLA.
 
 
 23
 We therefore have jurisdiction over the interlocutory order finding the defendants liable under state law because it is part of an order granting an injunction. The interlocutory order finding the defendants liable under CERCLA, on the other hand, is not part of the order granting the injunction. The CERCLA order therefore falls under none of the statutory provisions that allow for immediate interlocutory appeal.
 
 C. Pendent Appellate Jurisdiction
 
 24
 The defendants argue that the CERCLA order is nevertheless appealable because it is "inextricably intertwined" with the injunction. They invoke the doctrine of pendent appellate jurisdiction that the Supreme Court alluded to in Swint v. Chambers County Commission, 514 U.S. 35, 115 S.Ct. 1203, 131 L.Ed.2d 60 (1995).
 
 
 25
 Swint was a civil rights case against the Chambers County Commission and three police officers. The police officers argued that they were entitled to qualified immunity, and the Commission argued that it was not liable because the sheriff who authorized the alleged civil rights violations was not the county's final policy-maker. The district court summarily adjudicated both parties' defenses and found that neither party was entitled to judgment.
 
 
 26
 Both parties immediately appealed even though the district court had not issued a final judgment. The Eleventh Circuit held that it had jurisdiction over the police officers' appeal under Mitchell v. Forsyth, 472 U.S. 511, 530, 105 S.Ct. 2806, 2817-18, 86 L.Ed.2d 411 (1985), which held that an order denying qualified immunity is immediately appealable. The Eleventh Circuit then held that it had pendent appellate jurisdiction over the Commission's claims even though the Commission's claims were not independently appealable.
 
 
 27
 The case then came before the Supreme Court. The Court agreed that the Eleventh Circuit had jurisdiction over the police officers' appeal, but held that "the Circuit Court did not thereby gain authority to review the denial of the Chambers County Commission's motion for summary judgment." Swint, 514 U.S. at 38, 115 S.Ct. at 1206. In other words, "there [was no] 'pendent party' appellate authority to take up the Commission's case." Id.
 
 
 28
 In so holding, the Court noted that the federal courts of appeals have endorsed the doctrine of pendent jurisdiction. Id. at 44 n. 2, 115 S.Ct. at 1209 n. 2. The Court also acknowledged the parties' argument that § 1291's final decision requirement is designed to prevent parties from interrupting litigation by pursuing piecemeal appeals and that once litigation has already been interrupted by an authorized pretrial appeal, there is no cause to resist the economy that pendent jurisdiction promotes. Id. at 45, 115 S.Ct. at 1209.
 
 
 29
 But the Court stated that "[t]hese arguments drift away from the statutory instructions Congress has given to control the timing of appellate proceedings." Id. If courts of appeals had discretion to hear "pendent" appeals, then Congress' statutory arrangement would be undermined. Id. at 45-48, 115 S.Ct. at 1209-11 (discussing 28 U.S.C. § 1292, which lists certain interlocutory appeals that are immediately appealable, and § 2072(c) of the Rules Enabling Act, 28 U.S.C. § 2071 et seq., which grants the Supreme Court rulemaking authority to proscribe which interlocutory orders are appealable).
 
 
 30
 Despite this strong language against pendent appellate jurisdiction, the Court left open a loophole for "inextricably intertwined" rulings. The Court stated that it "need not definitively or preemptively settle here whether or when it may be proper for a court of appeals with jurisdiction over one ruling to review, conjunctively, related rulings that are not themselves independently appealable." Id. at 50-51, 115 S.Ct. at 1212. The Court noted that the parties did "not contend that the District Court's decision to deny the Chambers County Commission's summary judgment motion was inextricably intertwined with that court's decision to deny the individual defendants' qualified immunity motions." Id. at 51, 115 S.Ct. at 1212. Nor, the Court noted, did the parties contend that "review of the former decision was necessary to ensure meaningful review of the latter." Id.
 
 
 31
 Given the Supreme Court's criticism of pendent appellate jurisdiction, the Court's "inextricably intertwined" exception should be narrowly construed. Under such a construction, the CERCLA order is not inextricably intertwined with the injunction. As explained above, the district court granted the injunction to abate the public nuisance that was caused by the trichloroethylene contamination at the 20th Street Property. We can easily address the defendants' state law liability without discussing the defendants' CERCLA liability. Just because the same facts are involved in both issues does not make the two issues inextricably intertwined. See Swint, 514 U.S. 35, 115 S.Ct. 1203, 131 L.Ed.2d 60; United States v. Stanley, 483 U.S. 669, 676-78, 107 S.Ct. 3054, 3059-61, 97 L.Ed.2d 550 (1987); Abney v. United States, 431 U.S. 651, 662-63, 97 S.Ct. 2034, 2041-42, 52 L.Ed.2d 651 (1977) (all holding that appellate court with interlocutory jurisdiction over one ruling lacked jurisdiction to review factually-related rulings that were not independently appealable).
 
 
 32
 In sum, the interlocutory CERCLA order does not fall under the collateral order doctrine, the interlocutory-appeal statute, or the "inextricably intertwined" doctrine. We therefore lack jurisdiction to hear the CERCLA portion of this appeal. Accordingly, we will now turn to the portions of the appeal over which we do have jurisdiction: the appeal from the district court's order finding the defendants liable under state law and the appeal from the district court's order issuing an injunction against the defendants.
 
 
 33
 II. Summary Adjudication of the Defendants' Liability Under State Law
 
 A. Sufficient Time for Discovery
 
 34
 The defendants first argue that the district court should not have adjudicated their liability under state law without giving them more time to conduct discovery. They rely on Rule 56(f) of the Federal Rules of Civil Procedure, which states as follows:
 
 
 35
 Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.
 
 
 36
 District courts have "wide latitude in controlling discovery, and [their] rulings will not be overturned in the absence of a clear abuse of discretion." Volk v. D.A. Davidson & Co., 816 F.2d 1406, 1416-17 (9th Cir.1987) (quoting Foster v. Arcata Assoc., Inc., 772 F.2d 1453, 1467 (9th Cir.1985)). Nevertheless, a district court should continue a summary judgment motion upon a good faith showing by affidavit that the continuance is needed to obtain facts essential to preclude summary judgment. See McCormick v. Fund American Cos., Inc., 26 F.3d 869, 885 (9th Cir.1994). Thus, the defendants must show (1) that they have set forth in affidavit form the specific facts that they hope to elicit from further discovery, (2) that the facts sought exist, and (3) that these sought-after facts are "essential" to resist the summary judgment motion.
 
 1. Affidavits
 
 37
 "References in memoranda and declarations to a need for discovery do not qualify as motions under Rule 56(f)." Brae Transp., Inc. v. Coopers & Lybrand, 790 F.2d 1439, 1443 (9th Cir.1986). Rather, Rule 56(f) requires litigants to submit affidavits setting forth the particular facts expected from further discovery. We have stated that "[f]ailure to comply with the requirements of Rule 56(f) is a proper ground for denying discovery and proceeding to summary judgment." Id.
 
 
 38
 The record does not show whether the defendants ever actually submitted affidavits setting forth the particular evidence that they had hoped to elicit from further discovery. It appears from the record that the defendants only implicitly moved for more time to conduct discovery. For instance, when addressing the defendants' request for an extension of time, the district court did not refer to any specific motion by the defendants. Instead, the district court stated that the "[d]efendants imply that they will request further time for discovery of the facts upon which plaintiff bases its motion." The defendants' apparent noncompliance with the terms of the statute provides an adequate ground for us to affirm the district court's denial of the defendants' request for more discovery. See id.
 
 2. Existence of Facts Sought
 
 39
 In any event, as we have emphasized, "[d]enial of a Rule 56(f) application is proper where it is clear that the evidence sought is almost certainly nonexistent or is the object of pure speculation." Terrell v. Brewer, 935 F.2d 1015, 1018 (9th Cir.1991).
 
 
 40
 Here, the defendants wanted more time to discover the source of the groundwater contamination at Stanley Park. There is undisputed evidence, however, that workers at Victor Industries dumped trichloroethylene at the 20th Street Property for almost twenty years, that groundwater under the 20th Street Property is contaminated with trichloroethylene, that a well located between the 20th Street Property and the Louisiana Pacific Property is contaminated with trichloroethylene, that the Louisiana Pacific Property is not contaminated with trichloroethylene, and that the groundwater is flowing from the 20th Street Property toward Stanley Park. Given these uncontroverted facts, evidence that the 20th Street Property was not the source of contamination at Stanley Park is "almost certainly nonexistent or is the object of pure speculation." Id.
 
 3. Essentialness of Facts Sought
 
 41
 Moreover, Rule 56(f) mandates that "the party seeking the continuance must show that it lacks the 'facts essential' to resist the summary judgment motion." McCormick, 26 F.3d at 885. But the facts that the defendants hope to elicit during discovery are not essential to resisting California's summary adjudication motion.
 
 
 42
 The undisputed evidence that trichloroethylene contaminated the soil and groundwater at the 20th Street Property is sufficient to establish the defendants' liability under California law. To succeed on its summary adjudication motion, California need not prove that property other than the 20th Street Property suffered from contamination. Under California law, the pollution at the 20th Street Property constitutes a public nuisance and violates California's environmental laws. See Carter v. Chotiner, 210 Cal. 288, 291, 291 P. 577 (1930) (polluted water is a public nuisance); Cal. Health & Safety Code § 25358.3 (when a release or threatened release of hazardous substances endangers the environment, those responsible may have to take remedial action). Therefore, any additional data about contamination at property other than the 20th Street Property is not relevant to oppose the summary adjudication motion. See McCormick, 26 F.3d at 885 (concluding that additional testimony "would have made no difference on summary judgment, because the allegedly omitted material would not have altered the total mix of information available" to the plaintiff).
 
 
 43
 The defendants therefore have not satisfied the requirements of Rule 56(f). Accordingly, the district court did not abuse its discretion when it denied the defendant's request to stay summary adjudication and continue discovery.
 
 B. Summary Adjudication Standards
 
 44
 Next, the defendants argue that there are genuine issues of material fact about who polluted the groundwater at Stanley Park and other off-site locations. They also argue that California is not entitled to judgment as a matter of law because the defendants were not owners or operators of the 20th Street Property. In short, the defendants believe that California failed to meet the requirements for summary adjudication.
 
 
 45
 Summary adjudication "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Thus, the relevant inquiry in a summary adjudication motion is threefold: is there a genuine issue, is that issue about a material fact, and is the moving party entitled to judgment as a matter of law.
 
 1. Genuine Issue
 
 46
 An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson, 477 U.S. at 248, 106 S.Ct. at 2510. Of course, there must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Id. at 249, 106 S.Ct. at 2511 (citing First Nat. Bank of Ariz. v. Cities Service, Co., 391 U.S. 253, 288-89, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968)). "If the evidence is merely colorable ... or is not significantly probative, ... summary judgment may be granted." Id. at 249-50, 106 S.Ct. at 2511 (citations omitted).
 
 
 47
 The defendants contend that the district court erred by rejecting the testimony of Jay Lucas (their expert witness) and the contour maps that Lucas prepared. The contour maps allegedly depict a "bull's eye" of trichloroethylene contamination radiating from the Louisiana Pacific Property. According to the defendants, Lucas's maps and testimony support an inference that the Louisiana Pacific Property was the source of the contamination detected at Stanley Park.
 
 
 48
 The Lucas evidence does create a dispute-or, in the words of the summary adjudication statute, an "issue"-between the parties: Lucas's evidence suggests that the Louisiana Pacific Property contaminated the water at Stanley Park, and California's evidence suggests that the 20th Street Property contaminated the water at Stanley Park.
 
 
 49
 Merely showing that there is a dispute, however, is not enough. The defendants must show that there is a genuine dispute. This they have failed to do.
 
 
 50
 In the abstract, the defendants are right. A juror who accepted Lucas's maps as accurate could conclude that the contamination was originating from the Louisiana Pacific Property and was becoming more diluted as it spread outwards. But this case does not arise in the abstract. It arises in the context of undisputed facts, many of which mandate a different interpretation of Lucas's maps: namely, that the contamination flowed "downhill" from the 20th Street Property and accumulated at the bottom of the incline, which happened to be at the edge of the Louisiana Pacific Property.
 
 
 51
 Given the following facts, no reasonable juror could conclude that the Louisiana Pacific Property, rather than the 20th Street Property, was the source of the contamination at Stanley Park: (1) From 1963 to 1980, workers at Victor Industries used large quantities of trichloroethylene as a degreaser at the 20th Street Property and dumped it on the ground there; (2) scientists detected trichloroethylene contamination in the soil and in the water at the 20th Street Property; (3) water flows from higher ground to lower ground; (4) the Louisiana Pacific Property is downgradient from the 20th Street Property; (5) a well located between the two properties-in other words, downgradient from the 20th Street Property and upgradient from the Louisiana Pacific Property-is contaminated with trichloroethylene; and (6) testing of various sources of contamination at the Louisiana Pacific Property revealed no trichloroethylene.[3] Thus, if Lucas's maps were accurate and there really was more trichloroethylene near the Louisiana Pacific Property than there was away from it, then the trichloroethylene must have flowed from the 20th Street Property and accumulated at the edge of the Louisiana Pacific Property. No other conclusion is reasonable given the undisputed facts of this case. Accordingly, there is no genuine dispute about which property polluted the water at Stanley Park and the other off-site locations.
 
 2. Material Fact
 
 52
 Besides failing to show a genuine dispute, the defendants fail to show that the parties dispute material facts. The defendants list many facts that the parties dispute, but as the defendants themselves point out, all of the disputed facts pertain to how the trichloroethylene ended up at Stanley Park and other off-site locations. As shown below, the facts pertaining to off-site pollution are not material to California's summary adjudication motion.
 
 
 53
 Substantive law determines which facts are material. Anderson, 477 U.S. at 248, 106 S.Ct. at 2510. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id.
 
 
 54
 The relevant substantive law here is California nuisance law and California environmental law. Under these laws, polluted water is a public nuisance, Carter v. Chotiner, 210 Cal. 288, 291, 291 P. 577 (1930), and any person who creates or helps create and maintain a nuisance is liable for its abatement and damages. Selma Pressure Treating Co., Inc. v. Osmose Wood Preserving Co., 221 Cal.App.3d 1601, 1619-20, 271 Cal.Rptr. 596 (1990). Furthermore, when a release or threatened release of hazardous substances endangers the environment, those responsible may be ordered to take remedial action. Cal. Health & Safety Code § 25358.3.
 
 
 55
 Thus, to state a claim under California law, California need not prove that trichloroethylene migrated from the 20th Street Property to other areas. It is enough that the water under the 20th Street Property itself was contaminated. In other words, the polluted water at the 20th Street Property created a public nuisance and endangered the environment. The cause of the trichloroethylene contamination at Stanley Park and other off-site areas is therefore immaterial to California's state law claims.
 
 3. Judgment as a Matter of Law
 
 56
 Given that there is no genuine dispute about any material fact, the defendants can defeat the summary adjudication order only if the facts do not entitle California to judgment as a matter of law. See Fed.R.Civ.P. 56(c) (summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law). The defendants argue that California is not entitled to judgment as a matter of law because the defendants were not owners or operators of the 20th Street Property at the time that hazardous chemicals were disposed there.
 
 
 57
 This argument presumably goes to the interlocutory CERCLA-liability issue, over which we have no appellate jurisdiction. As mentioned above, it is CERCLA-not state law-that imposes liability on "owners" and "operators" of facilities at which hazardous substances were dumped. 42 U.S.C. § 9607.
 
 
 58
 Unlike CERCLA, California law imposes liability on any person who maintains a nuisance-regardless of whether that person has an interest in the land. Hardin v. Sin Claire, 115 Cal. 460, 463-64, 47 P. 363 (1896) (holding administrator of an estate liable for maintaining a nuisance even though it was the decedent who had originally created the nuisance). As executors of Muscat's estate and trustees over Muscat's trusts, the appellants maintained a nuisance by administering property where hazardous chemicals were polluting the water. Therefore, the appellants are liable under California law regardless of whether they were owners or operators under CERCLA. Accordingly, the district court properly found that California was entitled to judgment as a matter of law on the state law claims.
 
 
 59
 California has met the requirements for summary adjudication. The district court therefore did not err when it found as a matter of law that the defendants were liable under California's nuisance and environmental laws.
 
 III. Issuance of the Injunction
 
 60
 Besides contesting their liability under state law, the defendants contest the injunction that requires them to abate the public nuisance. Specifically, the defendants argue that the injunction is too broad and that it violates Rule 65(d) of the Federal Rules of Civil Procedure.
 
 A. Breadth of Terms
 
 61
 Although the defendants claim that the entire injunction is overbroad, they point to only two provisions that they claim are too broad: the modification provision (which allows the State Department of Toxic Substances Control to modify an order that it issued) and the waterline provision (which requires the defendants to install a waterline to Stanley Park). The modification provision, however, is not part of the injunction,[4] and the waterline provision is moot because California has already built the waterline, see Friends of the Earth, Inc. v. Bergland, 576 F.2d 1377, 1379 (9th Cir.1978) ("Where the activities sought to be enjoined have already occurred, and the appellate courts cannot undo what has already been done, the action is moot."). Moreover, the remaining provisions of the injunction are not overbroad.
 
 
 62
 The provisions of the injunction originate from an order that requires the defendants to clean up soil and water at the 20th Street Property and at areas up to a mile away. The order was issued by the State Department of Toxic Substances Control. The Department of Toxic Substances Control has experience removing hazardous substances from the soil and is authorized by the California Health and Safety Code to issue orders for removing or remedying releases of hazardous substances.
 
 
 63
 The district court independently reviewed the provisions of the Department's order and concluded that they were necessary to ensure public safety. The defendants might believe that the provisions pertaining to the surrounding areas are too broad because the 20th Street Property was not the source of the contamination detected at those areas. As explained above, however, the district court properly found that the 20th Street Property was the source of the off-site contamination. The district court was therefore well within its discretion when it relied on the Department's expertise and incorporated the provisions of the order into the injunction.
 
 B. Incorporation by Reference
 
 64
 In their final argument, the defendants contend that the district court violated Federal Rule of Civil Procedure 65(d) by incorporating the Department's order into the injunction. Rule 65(d) provides that every order granting an injunction "shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained...." Fed.R.Civ.P. 65(d). Ordinarily, "an injunction should not incorporate by reference another document." Davis v. City and County of San Francisco, 890 F.2d 1438, 1450 (9th Cir.1989) (quoting Henry Hope X-Ray Prods., Inc. v. Marron Carrel, Inc., 674 F.2d 1336, 1343 (9th Cir.1982)).
 
 
 65
 We have not read Rule 65(d) so strictly as to preclude any incorporation, however. See id. at 1450. Instead, we have interpreted the rationale behind the incorporation-by-reference language in Rule 65(d) as a safeguard to "ensure adequate notice to defendants of the acts prohibited." Henry Hope X-Ray, 674 F.2d at 1343 (holding that the district court did not abuse its discretion when it failed to attach a confidential appendix to its injunctive order because the appendix was transmitted to the parties).
 
 
 66
 By incorporating the order into the injunction, the district court acted consistently with the rationale of Rule 65(d). The defendants were aware of the order because it was physically attached to the injunction itself. Thus, the defendants received adequate notice that they could face contempt if they violated the order. Under these circumstances, the district court did not err by attaching the order to the injunction.
 
 CONCLUSION
 
 67
 The district court properly found the defendants liable under California's nuisance and environmental laws and properly issued an injunction against the defendants. Given the interlocutory posture of this case, however, we lack appellate jurisdiction to consider whether the district court also properly found the defendants liable for California's clean-up costs under CERCLA. Accordingly, the CERCLA portion of this appeal is DISMISSED and the remaining portions of this appeal are AFFIRMED.
 
 
 
 [1]
 After California filed this lawsuit, the Connecticut Superior Court, which oversaw Muscat's estate, removed the trustees and placed the trust assets into receivership. The federal court in California then substituted Western Resources, Inc., the appointed receiver, as a defendant in place of the trustees. Western Resources intervened in this appeal and filed a brief in support of the appellants' arguments
 
 
 [2]
 Western Resources appealed separately. Its appeal is therefore discussed in a separate opinion, which is found at California v. Campbell, 138 F.3d 784 (9th Cir.1998)
 
 
 [3]
 The defendants argue that the Louisiana Pacific Property is not downgradient from the 20th Street Property and that the Louisiana Pacific Property is polluted with trichloroethylene. They have failed to present any evidence to support these arguments, however. Instead, they argue that they need more time to obtain such evidence. As discussed above, this argument is not persuasive. The defendants failed to file the necessary affidavit and they failed to show that additional discovery would uncover essential facts. Thus, although the court must view genuinely-disputed facts in the light most favorable to the defendants, it must treat these unrebutted facts as true
 
 
 [4]
 Although the modification provision is part of an order that was incorporated into the injunction, the district court specifically excepted that provision from the injunction:
 If the State construes my order as incorporating [the modification provision] ..., it seems to me that [the modification provision] ... provides the Executive Branch with authority to engage in unilateral action. I don't think that the Executive Branch should have the authority to engage in such action ... and I have no intention of embracing such action.
 Any action that is before me for purposes of contempt must be on the basis of something that I have specifically ordered.