319 F.3d 1161
 State of CALIFORNIA, on behalf of the CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES CONTROL, Plaintiff,
v.
Albert CAMPBELL, individually and as Trustee of the Victor Muscat Testamentary Trusts and Executor of the Estate of Victor Muscat; Charles Tackman, individually and as Trustee of the Victor Muscat Testamentary Trusts and Executor of the Estate of Victor Muscat; Marjorie Tackman; Alan Tackman; Robert Tibriss, individually and as Trustee of the Victor Muscat Testamentary Trusts and Executor of the Estate of Victor Muscat; Vic Inc, a New Jersey corporation; Clay McGowan; Vic Inc, a New Jersey corporation, Defendants-Appellants,
v.
Louisiana-Pacific Corporation, Third-Party-Defendant-Appellee.
 No. 01-16397.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted November 6, 2002.
 Filed February 14, 2003.
 
 Dale C. Campbell and Cheryl L. King, Weintraub Genshlea Chediak Sproul, Sacramento, CA, for the defendants-appellants.
 Kerry Shea and Aaron Danzer, Thelen, Reid & Priest, LLP, San Francisco, CA, for the third-party-defendant-appellee.
 Appeal from the United States District Court for the Eastern District of California; Frank C. Damrell, Jr., District Judge, Presiding. D.C. No. CV-93-00604-FCD.
 Before B. FLETCHER, RICHARD S. ARNOLD,* and RAWLINSON, Circuit Judges.
 OPINION
 RICHARD S. ARNOLD, Circuit Judge.
 
 
 1
 This case arises out of contamination of groundwater in Chico, California, with the chemical trichloroethylene (TCE). After extensive investigation, the State of California brought suit against appellants alleging that the land they owned[1] was the source of the contamination. In an earlier summary judgment that was affirmed by this Court, they were found to be among those responsible for the pollution of the land. Appellants then brought a third-party complaint against Louisiana-Pacific Corporation (L-P) claiming that L-P had contributed to the contamination, so as to entitle appellants to partial indemnification. The District Court granted summary judgment in favor of L-P on the ground that there was insufficient evidence that TCE was ever released on L-P's property. Appellants are before this Court arguing that they raised a genuine issue of material fact as to whether L-P was a source of the TCE contamination. We reverse the District Court's grant of summary judgment, because, in our view, appellants did raise a genuine issue of material fact.
 
 I.
 
 2
 In 1989, the California Department of Toxic Substances Control began investigating groundwater contamination in Chico, California. Over the course of the investigation, the Department discovered a large plume of TCE contamination. The plume ran from appellants' property on the northeast to a neighborhood called Stanley Park on the southwest. L-P's property was located right in the middle of the plume, and the greatest concentration of TCE in the groundwater was centered under L-P's property. After substantial investigation, the Department concluded that appellants' property was the source of the contamination. The Department further concluded that TCE was never released on L-P's land.
 
 
 3
 The State brought suit to recoup investigation costs and to force appellants to take remedial action. In 1993, the State moved for summary judgment on the issue of appellants' liability. The appellants opposed the motion, arguing that the evidence also tended to prove that L-P was the source of the contamination. L-P was not a party to the case at that time. The District Court entered summary judgment for the State, finding that appellants were jointly and severally liable for the contamination. This Court affirmed that decision, State of California v. Campbell, 138 F.3d 772 (9th Cir.1998), giving two grounds for its decision. First, we concluded that appellants had not raised a genuine issue of fact, stating: "no reasonable juror could conclude that the Louisiana Pacific Property, rather than [appellants' property], was the source of the contamination at Stanley Park...." Id. at 781 (emphasis added). Second, we held that the claimed dispute was immaterial, because all that the State had to prove was that a discharge had occurred on appellants' land. Id. at 781-82. We affirmed the summary judgment on liability and remanded the case for further proceedings, including proceedings to determine damages.
 
 
 4
 On remand, appellants brought L-P in as a third-party defendant, arguing that L-P had contributed to the TCE contamination, so it should bear part of the costs. In December of 1998, after additional discovery, L-P filed for summary judgment on the third-party complaint. L-P argued that the evidence conclusively proved that it had not released any TCE, and thus it could not be held liable.
 
 
 5
 In ruling on the motion for summary judgment, the District Court was presented with numerous affidavits, various scientific study results attached to the experts' affidavits, and numerous deposition transcripts of employees who used to work on L-P's property when it was owned by Diamond International.[2]
 
 
 6
 L-P argued that an exhaustive investigation of its land conducted by its environmental consulting firm and overseen by the State had provided absolutely no physical evidence that it contributed to the TCE contamination. As part of this investigation, L-P's environmental-response consultants took numerous soil samples and tested them for numerous chemical contaminants, including TCE. None of these samples tested positive for TCE. This led L-P and the State to conclude that L-P's property was not the source of the TCE contamination, but that the TCE contamination under this property was caused by groundwater flow from appellants' land. Numerous experts presented this conclusion and the information underlying it to the District Court through affidavits to support L-P's motion for summary judgment.
 
 
 7
 Appellants countered with testimony of several individuals who worked for Diamond International. The most persuasive testimony was that of Sam Holmes, who worked for Diamond International between 1973 and 1975. Mr. Holmes testified that he worked one of the company's offset printing presses, and that, at times, the company used TCE-based solvents to clean the print rollers. He testified that at least once a day the used solvents would be dumped directly onto the ground outside of the factory, estimating that between 10 and 25 gallons were dumped each day. L-P answered Mr. Holmes's testimony by pointing out that he had shown the state investigators where he remembered the dumping pit was, yet the soil samples from that area, according to tests conducted by the State, did not contain TCE.
 
 
 8
 Appellants also presented the testimony of other employees who did not directly know that TCE had been dumped onto the ground, but whose testimony provided circumstantial corroboration of that fact. Numerous employees testified that Diamond International used solvents in other parts of its business. Other employees testified that used solvents were dumped directly onto the ground. Some recounted that the steam cleaner used solvents, and that the area used for steam cleaning drained directly into the ground. None of these other employees, however, could remember whether TCE was ever used.
 
 
 9
 Finally, appellants presented the affidavit of their own expert, Stephen Carlton. Mr. Carlton stated his conclusion that L-P was a source of TCE contamination. First, he noted that the highest concentration of TCE contamination occurred under L-P's land, and that the contamination level had remained nearly constant between 1994 and 1997. He argued that the constant nature of the contamination plume disproved L-P's argument that the TCE had migrated to its land through the groundwater flow from appellants' land. Mr. Carlton argued that if the contamination of L-P's land had been due to groundwater flow, the highest concentration of TCE contamination would have continued to move downgradient to the Stanley Park area. He thus concluded that part of the TCE contamination must have originated on L-P's land. To support this conclusion, Mr. Carlton asserted that TCE was a commonly used chemical in the offset printing industry and in wax refining, and was also commonly used to clean machine parts. Diamond International engaged in each of these activities on the property now owned by L-P. These facts lent circumstantial support to Mr. Carlton's conclusion that L-P's property had contributed to the contamination.
 
 
 10
 Mr. Carlton also answered L-P's argument about the lack of physical evidence. He first asserted that there were physical findings. In testing the soil, L-P had found 1,1-dichloroethylene (1,1 DCE), which is one of the compounds into which TCE biodegrades. Mr. Carlton noted that the levels of 1,1 DCE in the three samples from L-P's land were as high as the levels in all but one sample from appellants' land. Thus, there was some physical evidence supporting the conclusion that TCE had been released on L-P's land. Mr. Carlton also challenged the methodology of collecting samples on L-P's land. He argued that L-P had not taken and tested enough samples to rule out TCE contamination. He also asserted that the method of testing the samples was inadequate. L-P had obtained samples by digging up portions of land with a backhoe. Mr. Carlton argued that with a volatile chemical such as TCE this method is inappropriate because it can cause the TCE to dissipate before the soil can be tested.
 
 
 11
 Faced with all of this evidence, the District Court granted summary judgment in favor of L-P. The Court discounted the testimony of Mr. Holmes on the ground that it was directly contradicted and disproved by L-P's physical findings. Dist. Ct. Op. 12-13. Next, the Court dealt with Mr. Carlton's opinion, finding that it was too speculative to create a genuine issue of material fact. Id. at 13-14. The Court said that Mr. Carlton's broad assertions about the use of TCE in various industries were impermissible. The Court found that Mr. Carlton's challenges to the physical evidence were unavailing because appellants had had years to conduct their own testing on the land but had failed to do so. Id. at 12 n. 6.
 
 II.
 
 12
 The parties to this case agree about the underlying law. To establish a claim for contribution under the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), Appellants have to prove that (1) L-P is a member of one of the classes of proper defendants, (2) the site constitutes a facility, (3) there was a release or threatened release of hazardous materials on the property, and (4) the release caused appellants to sustain damages. See 3550 Stevens Creek Assoc. v. Barclays Bank, 915 F.2d 1355, 1358 (9th Cir.1990); 42 U.S.C. § 9613(f). In this case, L-P concedes the first two elements. The District Court granted summary judgment in favor of L-P because it felt that appellants did not raise a genuine issue of material fact as to whether TCE was ever released on L-P's land. Thus, the question before this Court is whether appellants raised a genuine dispute about whether TCE was released on L-P's property.[3]
 
 
 13
 Because this case was decided on summary judgment, we must view the evidence in the light most favorable to the nonmoving party and determine whether there are any genuine issues of material fact. Guebara v. Allstate Ins. Co., 237 F.3d 987, 992 (9th Cir.2001); Fed.R.Civ.P. 56(c). A genuine dispute arises "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Moreover, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, [when] he is ruling on a motion for summary judgment." Id. at 255, 106 S.Ct. 2505. This Court reviews grants of summary judgment de novo. Guebara v. Allstate Ins. Co., supra.
 
 
 14
 With respect, we believe the District Court failed to give appropriate weight to the sworn statements of Sam Holmes and Stephen Carlton and weighed the reliability of the expert testimony. Sam Holmes testified that while he was working for Diamond International, TCE was dumped into an open pit on a daily basis. The District Court concluded that this testimony could not be believed because it was contradicted by the physical findings and conclusions of L-P's experts. To be sure, the physical evidence did call Mr. Holmes's testimony into doubt; Mr. Holmes showed State investigators where he remembered the open pit, and the physical tests conducted by L-P under state supervision did not find any physical evidence of TCE at that location. Nevertheless, it is hard to say a reasonable jury could not conclude that Mr. Holmes was telling the truth. The jury could come to such a conclusion, for example, after deciding that the physical tests conducted by L-P were insufficient—an allegation made by appellants' expert.
 
 
 15
 The District Court held that Mr. Carlton's testimony was too speculative and thus could not overcome a summary judgment motion.[4] Dist. Ct. Op. at 13-14. In making this determination, however, the Court did not mention the majority of the expert's opinion. The Court concluded only that Mr. Carlton's statement that TCE could have been used in various activities on L-P's land was speculative. The Court failed to address Mr. Carlton's general conclusion that the scientific evidence indicated that TCE had been released on L-P's land. This conclusion was based primarily upon the equilibrium of the TCE plume, with the highest concentration under L-P's land, and the presence of a TCE breakdown component in the soil samples. Mr. Carlton's comments about the use of TCE in various industries merely provided incidental support for his ultimate conclusion. Thus, Mr. Carlton's testimony was not speculative; it was based upon the scientific evidence and was bolstered by the fact that TCE had been in general use in the industries that had occupied L-P's land.
 
 
 16
 Appellants have raised a genuine issue of material fact as to whether TCE was ever released on L-P's land. We therefore reverse the judgment and remand this cause for proceedings not inconsistent with this opinion.
 
 
 17
 REVERSED AND REMANDED.
 
 
 
 Notes:
 
 
 *
 The Honorable Richard S. Arnold, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation
 
 
 [1]
 Appellants owned the land as part of the testamentary trust of Victor Muscat, who had operated an industrial plant on the property
 
 
 [2]
 All parties agree that L-P is responsible for any contamination caused by the property while it was owned by Diamond International
 
 
 [3]
 The opinion of the District Court discusses the question whether this Court's earlier opinion inState of California v. Campbell, 138 F.3d 772 (9th Cir.1998), is controlling under the law-of-the-case doctrine, and concludes that it is not. We agree. Neither party has argued before this Court that the law-of-the-case doctrine binds this Court. The prior decision is not controlling in this case because the issue before the Court was substantially different and because the evidentiary record has changed.
 
 
 [4]
 The District Court did not rule that Mr. Carlton's affidavit was inadmissible, but merely concluded that it was insufficient to create a genuine issue of material fact