The **CHARTER OAK FIRE INSURANCE COMPANY,** et al., Plaintiffs,

v.

**INTERSTATE MECHANICAL, INC., et al., Defendants.**

**No. 3:10–cv–01505–PK.**

United States District Court, D. Oregon, Portland Division.

July 23, 2013.

Everett W. Jack, Jr., Aaron K. Stuckey, Christopher F. McCracken, Davis Wright Tremaine, LLP, Portland, OR, for Plaintiff.

Lawrence Gottlieb, Joseph D. Hampton, Lisa C. Neal, Betts Patterson Mines, Seattle, WA, Craig R. Berne, Harris Berne Christensen, LLP, Lake Oswego, OR, for Defendant.

## OPINION AND ORDER

MOSMAN, District Judge.

On May 7, 2013, Magistrate Judge Papak issued his careful and well-reasoned Findings and Recommendation ("F & R") [358] in the above-captioned case. He recommended that (1) Travelers'[1] motion for partial summary judgment against Glacier for breach of the cooperation clause [238] and Continental's joinder in that motion [281] be granted; (2) Glacier's motion for summary judgment regarding certain occurrences [284] be denied; (3) Travelers' motion for partial summary judgment regarding the duty to indemnify for the Lake County action [222] and Continental's joinder in that motion [279] be denied; (4) Travelers' motion for partial summary judgment regarding pre–2007 policies [240] be granted; (5) Travelers' motion for partial summary judgment concerning "occurrence," "property damage," and various exclusions [256] and Continental's joinder in that motion [279] be denied; (6) Travelers' motion for partial summary judgment based on the pollution exclusion [334] be denied; (7) Travelers' motion for partial summary judgment as to the 2009–2011 policies [331] be denied; (8) Glacier's motions to stay [211, 273] be denied; (9) Tygart's motion to stay [263] be granted; (10) Glacier's motion to amend [216] be denied; (11) Glacier's Rule 56(d) motion and supplemental motion to compel [282] be denied as moot; (12) Continental's motion to limit scope of deposition [183] be granted; and (13) the remaining discovery motions be denied as moot [191, 196, 198, 200, 206, 226, 276]. Glacier filed objections [360], and Travelers [361] and Continental [364] responded to those objections.

Upon review, I agree with Judge Papak's recommendation, and I ADOPT the F & R[358] as my own opinion. I write separately only to clarify Judge Papak's finding that Glacier failed to assert a claim for bad faith breach and to discuss Glacier's recent Confession of Judgment in the Flathead County action.

---

1. I adopt the designated terms used in the F & R.

## LEGAL STANDARD

■ The magistrate judge makes only recommendations to the court, to which any party may file written objections. The court is not bound by the recommendations of the magistrate judge, but retains responsibility for making the final determination. The court is generally required to make a de novo determination regarding those portions of the report or specified findings or recommendation as to which an objection is made. 28 U.S.C. § 636(b)(1)(C). However, the court is not required to review, de novo or under any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the F & R to which no objections are addressed. *See Thomas v. Arn,* 474 U.S. 140, 149, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *United States v. Reyna–Tapia,* 328 F.3d 1114, 1121 (9th Cir. 2003). While the level of scrutiny under which I am required to review the F & R depends on whether or not objections have been filed, in either case, I am free to accept, reject, or modify any part of the F & R. 28 U.S.C. § 636(b)(1)(C).

## DISCUSSION

In Judge Papak's thorough F & R, he laid out the factual background and relevant legal standards controlling this dispute. I will not rehash them here. Instead, I focus my discussion on two issues: (1) Glacier's failure to assert a claim for bad faith breach, and (2) Glacier's recent Confession of Judgment in the Flathead County action.

### I. *Bad Faith Breach*

■ Glacier's principal objection to the F & R is that it was error for Judge Papak to rule on the insurers' claim for breach of the cooperation clause before resolving Glacier's properly-asserted claim for bad faith failure to defend. (Objs. [360] at 20.) I agree with Judge Papak that Glacier has not properly asserted a claim for bad faith.

To state a claim for relief, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). A pleading that offers only "labels and conclusions" or "'naked assertion[s]' devoid of 'further factual enhancement'" will not suffice. *Id.* (quoting *Twombly,* 550 U.S. at 555, 557, 127 S.Ct. 1955).

In Glacier's answer to Travelers' fourth amended complaint, it asserts the affirmative defenses of "Estoppel/waiver" and "Unclean hands." (Answer [173] at 8.) In addition, Glacier's counterclaims against Travelers and cross-claims against Continental state only that "Glacier asserts all contractual and extra contractual claims it has pursuant to Montana and other applicable law." (*Id.* [173] at 13.) In Glacier's pleadings, it does not allege any factual support for these naked assertions. Rather, Glacier argues that a bad faith claim is implicit in estoppel and unclean hands. To satisfy *Iqbal* and *Twombly,* however, even implicit claims require sufficient factual support. Therefore, I find that Glacier has not pleaded a bad faith claim.

The question then becomes whether Glacier may assert a bad faith claim for the first time at summary judgment. As Judge Papak noted, the law is clear in the Ninth Circuit that "absent prejudice," an affirmative defense may be raised for the first time on a motion for summary judgment. *Rivera v. Anaya,* 726 F.2d 564, 566 (9th Cir.1984). Glacier has discussed the issue of bad faith in briefing on various motions, including a motion for partial

summary judgment. (*See, e.g.,* Mem. [284] at 28 ("CWIC and Charter Oak/Travelers have breached their duty to defend and breached the implied covenant of good faith and fair dealing. Both are liable as a matter of law for bad faith and the consequent coverage by estoppel.").) Specifically, Glacier has argued that Travelers undermined its defense by retaining a firm to defend Glacier that had inadequate resources for the job, conditioning the replacement of the inadequate firm on obtaining a release of malpractice liability from Glacier, failing to pay the more capable Datsopolous firm for five months after it substituted the inadequate firm, and actively resisting discovery in this declaratory relief action. Absent prejudice, therefore, I should permit Glacier to raise its bad faith claim.

In my view, however, allowing Glacier to raise a bad faith claim in its motion for partial summary judgment would prejudice Travelers and Continental. This prejudice is best demonstrated by comparing the insurers' conduct with that of Glacier. Travelers pleaded failure to cooperate as a bar to coverage in all four relevant complaints. (*See, e.g.,* Fourth Amend. Compl. [154] ¶¶ 36(h), 54.) True, Travelers and Continental did not supply sufficient factual support in their complaints, but they at least identified the specific issue in their pleadings. As a result, when Travelers and Continental have repeatedly raised the issue with extensive factual support in briefing, Glacier has known that it needed to respond to it and has been able to do so with its own evidence.

In contrast, Glacier has never pleaded bad faith, despite seeking leave to amend its pleadings in other ways. Indeed, this seems to have been a deliberate sleight of hand to advance Glacier's interests. In its

unauthorized reply to objections, Glacier states the following:

> Travelers' prior material breach is a defense to Travelers contract claims, and Glacier pled unclean hands as an affirmative defense against these carriers. Further Glacier has a fully formed claimed for breach of contract, fraud, and breach of the Montana Unfair Trade Practices Act against these two carriers in the Lake County case in which all other necessary parties are presently joined.... For these carriers to say that Glacier has not sued them for breach of contract is incorrect. Glacier has done so in Lake. *Glacier has not done so here because Glacier could only do so by sacrificing its claim that this Court was the wrong forum.*

(Reply [369] at 27 (emphasis added).) Thus, Glacier concedes that it has chosen not to clearly assert a bad faith claim in order to pursue what it has viewed as a stronger argument, that this Court is the wrong forum.[2] Therefore, Glacier has attempted to have it both ways: It has chosen not to actually plead bad faith to advance its overall strategy, but it has made arguments regarding bad faith when such arguments have been beneficial. This approach failed to put Travelers and Continental on notice that Glacier was actually raising a claim for bad faith. Therefore, allowing Glacier to raise a bad faith claim for the first time at summary judgment would prejudice Travelers and Continental. As a result, I agree with Judge Papak that Glacier has not properly asserted a claim for bad faith.

## II. *Confession of Judgment*

On May 7, 2013, the very day Judge Papak issued his F & R, Glacier signed a

---

**2.** Glacier has vaguely raised the affirmative defenses of "Estoppel/waiver" and "Unclean hands" in this action. It is unclear why asserting a bad faith claim as well would jeopardize Glacier's argument that this is the incorrect forum.

Confession of Judgment in the Flathead County action. According to its terms, Glacier authorized the entry of judgment against it and in favor of Abbey/Land in the amount of $12,000,000. (Resp. [361] Ex. 3.) Glacier signed this Confession of Judgment without providing notice to or seeking consent from either Travelers or Continental. (McCracken Decl. [372] ¶¶ 2–3.) Glacier's decision to sign this Confession of Judgment has implications for my analysis of both the cooperation clause and the voluntary assumption of obligation clause.

### A. *Cooperation Clause*

■ Courts draw a distinction between situations in which the insurer unconditionally assumes liability for coverage and those in which the insurer defends under a reservation of rights. *See* 14 Lee R. Russ & Thomas F. Segalla, Couch on Insurance 3d, § 199:48 (3rd ed., 2007). If the insurer unconditionally assumes liability for coverage, a cooperation clause prohibiting settlement without the insurer's consent forbids such a settlement. If the insurer defends under a reservation of rights, however, an insured can enter into a settlement without the insurer's consent, so long as the agreement is made fairly, with notice to the insurer, and without fraud or collusion on the insurer. *See United Servs. Auto. Ass'n v. Morris*, 154 Ariz. 113, 119, 741 P.2d 246 (1987).

■ Here, Travelers and Continental are defending under a reservation of rights. As a result, if Glacier's Confession of Judgment were made fairly, with notice to the insurers, and without fraud or collusion, it would not bar coverage. It is incontrovertible, however, that Glacier did not provide notice to the insurers prior to settling with Abbey/Land on May 7, 2013. (McCracken Decl. [372] ¶¶ 2–3.)

In an effort to avoid a finding that Glacier breached the cooperation clause, it ap-

pears to argue that notice of any settlement negotiations in the Flathead County action would be sufficient. To that end, Glacier highlights settlement offers it made to Lemons, Tygart, Interstate, Travelers, and Continental between August 2012 and December 2012. (Cushman Decl. [373] ¶¶ 3–10.) On October 10, 2012, for example, Glacier demanded that Travelers and Continental settle the Flathead County action for $10,000,000 or it would stipulate to a judgment in favor of Abbey/Land for $15,000,000. (*Id.* [373] Ex. F–1.) In anticipation of Judge Papak's omnibus hearing on April 3, 2013, Glacier made an additional settlement offer to the same parties on March 30, 2013. None of these settlement negotiations directly involved Abbey/Land, and none of the settlement offers was accepted. Furthermore, there is no evidence that Glacier provided notice regarding settlement negotiations of any kind between March 30, 2013, and May 7, 2013, the day Judge Papak issued his F & R and Glacier signed the Confession of Judgment. In fact, Glacier has suggested that signing the Confession of Judgment was a direct response to Judge Papak's adverse F & R. (Reply [369] at 12 ("Any general contractor would accept such an offer from an owner, particularly where the insurers ... are defending under a reservation of rights, and have gotten an order such as the one at issue here.").)

In my view, the earlier settlement negotiations between Glacier, Lemons, Tygart, Interstate, Travelers, and Continental did not provide Travelers and Continental with notice of Glacier's Confession of Judgment in favor of Abbey/Land. Therefore, I conclude that Glacier was not at liberty to enter into settlement with Abbey/Land.

This conclusion reinforces Judge Papak's finding that Glacier breached its duty to cooperate. An insured breaches a cooperation clause if the insurer estab-

lishes three elements: "(1) the insurer diligently sought the insured's cooperation; (2) the insured willfully failed to cooperate; and (3) the insured's failure to cooperate prejudiced the insurer." *Assurance Co. of Am. v. MDF Framing, Inc.*, 2008 WL 361289, at *3 (D.Or. Feb. 7, 2008) (citing *Rosalez v. Unigard Ins. Co.*, 283 Or. 63, 581 P.2d 945 (1978); *Bailey v. Universal Underwriters Ins. Co.*, 258 Or. 201, 474 P.2d 746 (1970)). The Confession of Judgment is conclusive proof both that Glacier willfully failed to cooperate and that its failure to cooperate has prejudiced Travelers and Continental. For this additional reason, therefore, I agree with Judge Papak's finding that Glacier breached its duty to cooperate.

### B. *Voluntary Assumption of Obligation Clause*

In the F & R, Judge Papak noted that there appear to be no Oregon cases discussing voluntary assumption of obligation clauses. As a result, he followed courts from other jurisdictions, which tend to analyze these clauses under the general rubric of the duty to cooperate. *See Roberts Oil Co. v. Transam. Ins. Co.*, 113 N.M. 745, 752, 833 P.2d 222, 229 (1992). He therefore applied the same three-part test for determining whether the insured's breach of the cooperation clause barred coverage to determine whether the insured's breach of the voluntary assumption of obligation clause barred coverage. In so doing, Judge Papak correctly found that the voluntary assumption of obligation clause had not yet been triggered when he issued his F & R. (F & R [358] at 1207–10.)

Taking Judge Papak's cue, Glacier immediately signed the Confession of Judgment. Now there is no question that Glacier has willfully and voluntarily assumed an obligation and that, by so doing, it has prejudiced Travelers and Continental. Therefore, I conclude that Glacier has breached the voluntary assumption of obligation clause and is thus barred from coverage.

### CONCLUSION

Travelers' motion for partial summary judgment against Glacier for breach of the cooperation clause [238] and Continental's joinder in that motion [281] are GRANTED. Glacier's motion for summary judgment regarding certain occurrences [284] is DENIED. Travelers' motion for partial summary judgment regarding the duty to indemnify for the Lake County action [222] and Continental's joinder in that motion [279] are DENIED. Travelers' motion for partial summary judgment regarding pre-2007 policies [240] is GRANTED. Travelers' motion for partial summary judgment concerning "occurrence," "property damage," and various exclusions [256] and Continental's joinder in that motion [279] are DENIED. Travelers' motion for partial summary judgment based on the pollution exclusion [334] is DENIED. Travelers' motion for partial summary judgment as to the 2009–2011 policies [331] is DENIED. Glacier's motions to stay [211, 273] are DENIED. Tygart's motion to stay [263] is GRANTED. Glacier's motion to amend [216] is DENIED. Glacier's Rule 56(d) motion and supplemental motion to compel [282] are DENIED AS MOOT. Continental's motion to limit scope of deposition [183] is GRANTED. The remaining discovery motions are DENIED AS MOOT [191, 196, 198, 200, 206, 226, 276]. Finally, Travelers' motion for leave to file additional dispositive motion [362] is DENIED AS MOOT.

IT IS SO ORDERED.

### FINDINGS AND RECOMMENDATION

PAPAK, United States Magistrate Judge:

Plaintiffs The Charter Oak Fire Insurance Company, Travelers Property Casu-

alty Company of America, and The Travelers Indemnity Company (collectively "Travelers" or "plaintiffs") bring this declaratory judgment action under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, against Interstate Mechanical Inc. ("Interstate"), Glacier Construction Partners, LLC ("Glacier") and Continental Western Insurance Company ("Continental") to determine insurance coverage obligations arising from a large construction project in Montana. Continental asserts cross claims for declaratory relief against Interstate also involving coverage obligations. Now before the court are numerous motions, including motions for summary judgment, motions to stay, discovery motions, and a motion to amend. For the reasons discussed below: (1) Travelers' motion for partial summary judgment against Glacier for breach of the cooperation clause (# 238) and Continental's joinder in that motion (# 281) should be granted; (2) Glacier's motion for summary judgment regarding certain occurrences (# 284) should be denied; (3) Travelers' motion for partial summary judgment regarding the duty to indemnify for the Lake County action (# 222) and Continental's joinder in that motion (# 279) should be denied; (4) Travelers' motion for partial summary judgment regarding pre–2007 policies (# 240) should be granted; (5) Travelers' motion for partial summary judgment concerning "occurrence," "property damage," and various exclusions (# 256) and Continental's joinder in that motion (# 279) should be denied; (6) Travelers' motion for partial summary judgment based on the pollution exclusion (# 334) should be denied; (7) Travelers' motion for partial summary judgment as to Travelers 2009 to 2011 policies (# 331) should be denied; (8) Glacier's motions to stay (# 211, # 273) should be denied; (9) Tygart's motion to stay (# 263) should be granted; (10) Glacier's motion to amend (# 216) should be denied; (11) Glacier's

Rule 56(d) Motion and Supplemental Motion to Compel (# 282) should be denied as moot; (12) Continental's Motion to Limit Scope of Deposition (# 183) should be granted; and (13) the following discovery motions should be denied as moot (# 191, # 196, # 198, # 200, # 206, # 226, # 276).

As a housekeeping matter, docket entries # 305 and # 306 are joinders in opposition to summary judgment motions, and are not technically motions before the court at present.

## BACKGROUND

The procedural history of this case is too involved to repeat completely here. A more thorough summary can be found in the court's earlier Findings and Recommendation. (# 120.) A short and undoubtedly oversimplified recitation follows. Real estate developer Donald Abbey formed Abbey/Land, a development entity, and Glacier, a building contractor, to build a luxury residence on rural Shelter Island in Montana. Glacier hired Interstate, an Oregon HVAC and plumbing subcontractor to work on the project. Interstate purchased insurance policies from Travelers and Continental naming Glacier, as required, as an additional insured. Problems with the construction project developed. Abbey/Land and Glacier sued Interstate and other subcontractors for negligence and breach of contract in Flathead County, Montana. Interstate tendered defense to Travelers and Continental. Travelers then initiated the present declaratory judgment action against Interstate and Continental alleging that it had no duty to defend or indemnify Interstate in the Flathead County case. Continental similarly cross-claimed against Interstate for a declaration that it had no duty to defend or indemnify. Interstate failed to answer and the court entered a default judgment. Meanwhile, Glacier had pre-

vailed over Interstate in an arbitration over contractual disputes between them, and Abbey/Land demanded Glacier pay it the proceeds of that arbitration. When Glacier tendered that demand, Travelers added Glacier as a defendant in this suit, seeking a declaration that it had no duty to indemnify Glacier for liability created by Interstate's conduct, at issue in an already-concluded arbitration. Soon after, Abbey/Land amended its Flathead County complaint to turn Glacier from a plaintiff into a defendant, retaining only the negligence claims against Glacier. Glacier cross-claimed against all other co-defendants (its subcontractors), including Interstate. Glacier then filed a new coverage suit in Lake County, Montana against Abbey/Land, Interstate, other subcontractors, Travelers, Continental, and other of Glacier's alleged insurers (through policies purchased by other subcontractors naming Glacier as a secondary insured), seeking a declaration that all insurers had a duty to defend and indemnify Glacier for liability on claims made by Abbey/Land in the Flathead County case.

Glacier has consistently argued, under a number of different legal theories, that the present federal suit should be dismissed in favor of resolving all insurance coverage issues concerning the project through the Lake County case. The court has previously rejected these arguments. The court, however, acknowledged the possibility of declining declaratory relief jurisdiction at some point if it became clear that resolving Travelers' claim regarding the duty to indemnify would require the court to duplicate factual determinations that the Flathead County court would also be making in the context of the underlying liability litigation. Over the last six months, the parties have filed a multitude of interrelated discovery motions and dispositive motions. For the sake of efficiency, the court elected to hear arguments on all of these

motions in an omnibus hearing on April 3, 2013.

## LEGAL STANDARDS

### I. Motion for Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment is not proper if material factual issues exist for trial. *See, e.g., Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Warren v. City of Carlsbad,* 58 F.3d 439, 441 (9th Cir.1995), *cert. denied,* 516 U.S. 1171, 116 S.Ct. 1261, 134 L.Ed.2d 209 (1996). In evaluating a motion for summary judgment, the district courts of the United States must draw all reasonable inferences in favor of the nonmoving party, and may neither make credibility determinations nor perform any weighing of the evidence. *See, e.g., Lytle v. Household Mfg., Inc.,* 494 U.S. 545, 554–55, 110 S.Ct. 1331, 108 L.Ed.2d 504 (1990); *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

### II. Motion to Amend

Leave to amend is within the discretion of the trial court, but that discretion "should be guided by the underlying purpose of Rule 15(a) which was to facilitate decisions on the merits, rather than on technicalities or pleadings." *In re Morris,* 363 F.3d 891, 894 (9th Cir.2004) (citation omitted). "A district court may, however, take into consideration such factors as bad faith, undue delay, prejudice to the oppos-

ing party, futility of the amendment, and whether the party has previously amended his pleadings." *Id.* (citation omitted). Of these factors, the most important is the potential for prejudice to opposing parties. *See Zenith Radio Corp. v. Hazeltine Research, Inc.,* 401 U.S. 321, 330–31, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971). While futility alone provides sufficient grounds for denying a motion to amend, *see Johnson v. Buckley,* 356 F.3d 1067, 1077 (9th Cir. 2004), undue delay by itself cannot justify denial of a motion to amend. *See Bowles v. Reade,* 198 F.3d 752, 758 (9th Cir.1999). "An outright refusal to grant leave to amend without a justifying reason is ... an abuse of discretion." *Manzarek v. St. Paul Fire & Marine Ins. Co.,* 519 F.3d 1025, 1034 (9th Cir.2008) (citation omitted).

### III. Motion for Protective Order

A "court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including ... (D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters...." Fed. R.Civ.P. 26(c)(1). The party resisting discovery or seeking limitations may show "good cause" by demonstrating harm or prejudice that will result from the discovery. *Phillips ex rel. Estates of Byrd v. General Motors Corp.,* 307 F.3d 1206, 1210–1211 (9th Cir.2002).

### IV. Motion to Compel

Federal Civil Procedure Rule 26(b)(1) provides that "any matter, not privileged, that is relevant to the claim or defense of any party" is discoverable, and that "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P. 26(b)(1). However, district courts have discretion to limit the scope of discovery if: (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues. Fed.R.Civ.P. 26(b)(2)(c).

### DISCUSSION

There are numerous motions presently before the court, including ten motions for partial summary judgment. I first address Travelers' motion for partial summary judgment on Glacier's breach of the cooperation clause and Continental's joinder in that motion, and resolve that motion in Travelers' and Continental's favor. That conclusion affects many of the remaining motions before the court. Next, I address the various other summary judgment motions. Based on my dispositions of those motions, I determine that this court should decline declaratory relief jurisdiction and stay the present action as to defendant Tygart until resolution of the Flathead County case. Finally, I briefly discuss the pending motion to amend and address the numerous discovery motions.

#### I. Summary Judgment Motions

##### A. Travelers' and Continental's Motion Regarding Breach of Duty to Cooperate (# 238, # 281)

Travelers moves for partial summary judgment granting declaratory relief that Travelers has no obligation to further defend or indemnify Glacier for any of the underlying matters because Glacier has intentionally breached the cooperation clause

in the Travelers' policies at issue by colluding with Abbey/Land, the plaintiff in the underlying liability action in Flathead County. Continental joins in Travelers' motion and expands upon it, arguing that Glacier also breached the voluntary assumption of obligation clause in Continental's policies. These motions should be granted.

Both the Travelers and Continental policies at issue in this case contain cooperation clauses. The Travelers CGL policies provide that the insured must:

(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

(2) Authorize us to obtain records and other information;

(3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may apply.

(McCracken Decl., # 224, Exs. 1–5, 13–16, at Section IV(2)(c).) The Continental CGL policies at issue here contain identical clauses. (Neal Decl., # 280, Ex. 1 at Section IV(2)(c).) Moreover, the Travelers Blanket Additional Insured (Contractors) endorsement to the CGL coverage requires an additional insured to "immediately send us copies of all legal papers received in connection with the claim or 'suit', cooperate with us in the investigation or settlement of the claim or defense against the 'suit', and otherwise comply with all policy conditions." (Id., Exs. 14–16, at Subpart 4(c).) Substantially similar language is found in Continental's Blanket Additional Insured (Contractors) endorsement. (Neal Decl., # 280, Ex. 1, at Subpart 5) ("As soon as practicable, each addi-

tional insured must give us prompt notice of any 'occurrence' which may result in a claim, forward all legal papers to us, cooperate in the defense of any actions, and otherwise comply with policy conditions.") Finally, both the Travelers and Continental policies at issue here contain voluntary assumption of obligation clauses, providing that "No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent." (McCracken Decl., # 224, Exs. 1–5, 13–16, at Section IV(2)(d)); (Neal Decl., # 280, Ex. 1 at Section IV(2)(d).)

Unlike with the other summary judgment motions now before the court, Glacier does not specifically dispute that Oregon law should apply to interpretation of the cooperation clauses in the various insurance policies. Perhaps this is because there is no actual conflict between Oregon and Montana law concerning the interpretation of cooperation clauses, or because Glacier chose strategically not to raise a choice of law argument. In any case, I apply Oregon law.

In Oregon, an insured's breach of an insurance policy's cooperation clause is a defense that excuses the insurer's coverage obligations. *See Assurance Co. of Am. v. MDF Framing, Inc.*, No. CV 06–169–MO, 2008 WL 361289, at *3 (D.Or. Feb. 7, 2008). Courts find that an insured breaches a policy's cooperation clause if the insurer establishes three elements: "(1) the insurer diligently sought the insured's cooperation; (2) the insured willfully failed to cooperate; and (3) the insured's failure to cooperate prejudiced the insurer." *Id.*, citing *Rosalez v. Unigard Ins. Co.*, 283 Or. 63, 581 P.2d 945 (Or.1978); *Bailey v. Universal Underwriters Ins. Co.*, 258 Or. 201, 474 P.2d 746 (Or.1970). *See also Johnson v. Doughty*, 236 Or. 78, 83, 385 P.2d 760,

763 (1963) ("The defense of noncooperation is one that must be proven by the insurer."). The burden remains with the insurer to both plead and prove a breach of the policy's cooperation clause.

Here, Glacier argues that Travelers may not rely on the cooperation clause as a defense to coverage because it never pled Glacier's failure to cooperate. However, Travelers' most recent complaint pleads Glacier's failure to cooperate as one of the bases for Travelers' lack of defense of indemnity obligation. (Fourth Amend. Compl., # 154, ¶¶ 36(h), 54). In addition, Travelers pleads as affirmative defenses that Glacier's claims for coverage are barred by the "terms, exclusions, conditions, definitions and limitations contained in any or all of Plaintiffs' policies," and barred "to the extent that ... Glacier [has] failed to comply with any and all applicable provisions of the insurance policies." (Plaintiffs' Answer and Affirmative Defenses, # 178, ¶¶ 7 & 9.) It is true that Travelers does not specify the facts underlying its cooperation clause claim/defense. However, the law is clear in the Ninth Circuit that "absent prejudice" an affirmative defense may be raised for the first time on a motion for summary judgment. *Rivera v. Anaya*, 726 F.2d 564, 566 (9th Cir.1984). Glacier has not suggested it has been prejudiced by Travelers' assertion that coverage is barred by the cooperation clause. The facts underlying Travelers' position are facts of Glaciers' own making, thus discovery has not alluded Glacier on this matter. Glacier was able to respond with its own evidence and to argue it did not breach its duty to cooperate.[1] Accordingly, I address whether the court may conclude as a matter of law that Glacier breached the cooperation clauses of the relevant policies.

### 1. Insurer's Diligence in Seeking Cooperation

To satisfy the first element the insurer must make a "substantial showing of diligence," which is "the same diligence as [the insurer] would exercise to protect its own interests, if there were no advantage to be gained if cooperation fails." *Bailey*, 258 Or. at 222, 224, 474 P.2d 746 (internal quotations omitted). Whether the insurer exercised reasonable diligence is ordinarily a question of fact that should be determined "in [ ] light of the particular facts and circumstances of each case." *Id.* at 225, 474 P.2d 746. Here, however, there is no factual dispute that both Travelers and Continental diligently sought Glacier's cooperation. Both Travelers and Continental defended Glacier under a reservation of rights, warned Glacier that coverage would not apply if Glacier failed to cooperate, and requested that Glacier update Travelers on an ongoing basis about the matter. (Suppl. Jack Decl., # 304, Ex. 1, at 1–3.) Travelers engaged in formal and informal discovery with Glacier. Continental also sternly reminded counsel for Glacier that it "is required under the insurance policy to cooperate, including cooperation in any claim CWIC may have against other entities for reimbursement of defense costs or other payments" and further warned "[c]ompliance with this instruction will not necessarily cure any damage already caused by Glacier's failure to cooperate." (Cushman Decl., # 145, Ex. C at 3.) For its part, Glacier does not point to any specific instance where Travelers or Continental has failed to pursue Glacier's cooperation. I find, therefore, that Travelers and Continental diligently sought Glacier's cooperation.

---

1. For these same reasons, Continental is allowed to join in this motion for partial summary judgment. (See Continental's Answers, Affirmative Defenses and Cross Claims, # 182, at Second and Fourth Affirmative Defenses as to Glacier's Cross–Claim.)

### 2. Insured's Willful Failure to Cooperate

 Concerning the second element, Oregon courts recognize that a willful failure to cooperate does not require a showing of malice. *Assurance*, 2008 WL 361289, at *5. An insured's intentional, yet passive refusal to assist the insurer suffices. *Id.* Yet respected commentators also suggest that an insured breaches the cooperation clause of an insurance policy if it "appears to be assisting the claimant in the maintenance of his or her action." 14 Lee R. Russ & Thomas F. Segalla, Couch on Insurance 3d, § 199:33 (3rd ed., 2007). Indeed, an insured's active assistance of the claimant excuses coverage and defense obligations. *See, e.g., Airway Underwriters v. Perry*, 362 Mass. 164, 284 N.E.2d 604 (1972).

 Here, I agree with Travelers that Glacier has gone far beyond passive resistance or even the appearance of collusion. There is real no factual dispute that Glacier actively colluded with Abbey/Land in the Flathead County case. Travelers argues that Glacier has engaged in three different types of conduct that resisted Travelers' defense and aided Abbey/Land's prosecution. First, Glacier allowed itself to be made a defendant in the Flathead County case for the benefit of Abbey/Land, a related entity. Commentators indicate that while the existence of a relationship between the insured and the claimant does not conclusively establish collusion, such a relationship should be taken into account because "close family relationship or association tends to ally the sympathy of the insured with those to whom the insurer may be liable." Couch on Insurance 3d, § 199:33. In this case, the insured and the claimant are separate legal entities, but are owned and controlled by the same individual, Donald Abbey. The potential for collusion in this situation is exceptionally high, much more so even than in cases where the claimant and the insured are family members. In fact, it is undisputed that Donald Abbey permitted Glacier to be converted from a plaintiff in the Flathead County case to a defendant, a transformation that Glacier representative Nate Steinbeck testified was meant solely to allow Glacier to access additional insurance coverage, presumably for Abbey/Land and Donald Abbey's benefit. (McCracken Decl., # 237, Ex. 1 at 194:1–9.)

Second, and more importantly, Glacier worked directly with Abbey/Land, its attorneys, and its experts to create evidence favorable to Abbey/Land and to increase Abbey/Land's damages claims, all in a manner that was harmful to Glacier's litigation position. During the summer of 2012, Abbey/Land retained Paul Pederson, an accountant, to calculate Abbey/Land's damages on the Flathead County claims. (McCracken Decl., # 237, Ex. 4, Pederson Dep., at 26.) Pederson was present at a meeting in June 2012 along with Donald Abbey, counsel for Abbey/Land in the Flathead County case (Mr. Trieweiler), various Glacier representatives (Nate Steinbeck, Brenda Woolhouse), Glacier's counsel in the Flathead County case (from the Datsopoulos law firm), and John Cushman, Glacier's coverage counsel. (*Id.* at 27–28.) Pederson understood only that he was at the meeting to "create" or "compile" Abbey/Land's claim against Glacier, and did not know who all the various participants represented. (*Id.* at 29.) Sometime near the end of July 2012 Pederson completed a preliminary summary of Abbey/Land's damages for Mr. Trieweiler, Abbey/Land's counsel. (*Id.* at 43.) Around that time, the Datsopolous firm, which represents Glacier in the Flathead County case, called Mr. Pederson and asked him to sign a declaration. (*Id.*) That declaration, typed on pleading paper bearing the letterhead of Datsopolous, MacDonald & Lind, P.C.

and signed by Pederson on July 26, 2012, summarizes Pederson's estimate of the amount of Abbey/Land's damages in the Flathead County case. (McCracken Decl., # 237, Ex. 3 at 27–30.) In sum, Glacier participated in a joint conference with Abbey/Land's attorney and damages expert to create Abbey/Land's damages claims, then drafted a declaration for Abbey/Land's expert to help substantiate those damages estimates.

Glacier's collusion with Abbey/Land did not end there. Subsequently, Pederson received a call from Glacier's coverage counsel John Cushman and Glacier's project manager Nate Steinbeck, asking Pederson to "look at" whether Abbey/Land might also claim damages against Glacier and other Flathead County defendants for increased future electricity costs necessitated by the failure of heat pumps installed at the property. (McCracken Decl., # 237, Ex. 4, Pederson Dep. at 112–113). On August 21, 2012, Pederson emailed Cushman with his calculations indicating the increased electricity usage over a twenty year period had a present value of about $767,000. (McCracken Decl., # 237, Ex. 6 at 2–3.) Pederson later revised his damage summary, adding $715,384 for increased future electricity charges for 2009 to 2028. (*Compare* McCracken Decl., # 237, Ex. 3 at 17 *with* McCracken Decl., # 237, Ex. 5 at 13.) At Cushman's suggestion, Pederson also apparently added a $65,000 damages item for installing a larger drain line due to saltwater overload. (McCracken Decl., # 237, Ex. 3 at 17, Ex. 5 at 13, Ex. 6 at 5.) Finally, if there was any doubt about Glacier's collusion with Abbey/Land, an email indicates that Abbey/Land's 30(b)(6) deponent William Matteson asked counsel for Abbey/Land *and* Glacier whether either had "support" for the amount of Abbey/Land's original claims for damages. (McCracken Decl., # 237, Ex. 6 at 6–7.) Glacier presents no evidence to create a factual dispute about these events.

Third, Travelers contends that Glacier's invocation of a joint privilege for communications between itself, Donald Abbey, and Abbey/Land violates the cooperation clause. Glacier claimed a joint privilege in response to Travelers' requests for an explanation of why Glacier's Flathead County counsel prepared the Pederson declaration in the summer of 2012. (Jack Decl., # 193 at ¶ 7.) More recently, Glacier has moved for a protective order covering communications between Glacier, Donald Abbey, and Abbey/Land, arguing that these communications are privileged under the common interest doctrine. (Mot. for Prot. Order, # 196.) I decline to analyze that assertion of privilege now, since my ultimate finding that Glacier breached the cooperation clause of the various insurance policies eliminates any need to dispose of Glacier's discovery motions on their merits. But Glacier's claim of attorney-client privilege over communications with Abbey/Land is certainly consistent with Glacier's collusion with Abbey/Land in Flathead County. By asserting a common interest in "claiming property damage and insurance coverage" for damage at the project, Glacier illustrates its alliance with Abbey/Land in the Flathead County suit. (Mot. for Prot. Order, # 196, at 13.) Even so, I cannot conclude that asserting the privilege by itself constitutes proof of collusion, without first evaluating the claim of privilege on the merits. In this case, however, there is ample undisputed evidence of Glacier's other collusive activities, even without relying solely on Glacier's assertion of the common interest privilege.

Glacier raises several arguments in response to Travelers' allegation that Glacier breached the cooperation clause, all of which are unavailing. Glacier contends that assertion of a privilege for communi-

cations between Abbey, Abbey/Land, and Glacier does not constitute failure to cooperate. In a sense I agree, but there is much other evidence of Glacier's failure to cooperate that Glacier tellingly fails to rebut. Additionally, Glacier contends that Travelers has actually undermined Glacier's defense in Flathead County, not the other way around. Glacier argues Travelers initially retained a firm to defend Glacier that had inadequate resources for the representation, that when Travelers retained the more capable Datsopoulos firm, Travelers failed to pay defense costs for five months and then reneged on a promise to immediately pay half of the outstanding balance, and that Travelers and Continental have been actively resisting discovery in this action. Even assuming these assertions are accurate, at most they might provide support for a bad faith failure to defend claim by Glacier against Travelers.[2] They do not in any way relieve Glacier from complying with the duty to cooperate, mitigate its conclusive breach of that obligation, or preserve insurance coverage. Finally, in what appears to be an equitable argument, Glacier suggests that it would be unreasonable for Glacier to be forced to resist Abbey/Land's Flathead County claims in order to retain insurance coverage, since Donald Abbey's ownership of both entities was known to Interstate and its insurers and the purpose of Glacier's coverage as an additional insured under Interstate's policies was to provide protection for Glacier as well as Donald Abbey. As Glacier has reiterated many times, Glacier and Abbey/Land are separate entities. But Glacier's obligation under its insurance contracts is to cooperate with its insurers in their defense of Glacier against Abbey/Land, not to disregard the corporate structures of both enti-

ties and work collusively for the sole benefit of Donald Abbey.

Even making inferences favorable to Glacier as required on this motion, the court concludes that Glacier willfully failed to cooperate with Travelers and Continental by permitting itself to be made a defendant in Flathead County, but more importantly by preparing a declaration summarizing damages for Abbey/Land's damages expert, by suggesting Abbey/Land seek two additional categories of damages totaling over $780,000, and by invoking a common interest privilege to withhold relevant communications between Glacier and Abbey/Land. Such brazen collusion between the insured and the claimant epitomizes a willful failure to cooperate in the insured's defense. *See Perry*, 362 Mass. at 166, 168, 284 N.E.2d 604 (insured failed to cooperate by advising the injured party, referring the injured party to the insured's personal attorney for consultation, and providing the injured party with the original insurance policy).

### 3. Insured's Failure to Cooperate Prejudiced Insurer

Finally, to constitute a defense to coverage, an insured's willful failure to cooperate must also prejudice the insurer. *Assurance*, 2008 WL 361289, at *5. The insurer bears the burden to plead and prove that it has suffered prejudice as a result of an insured's noncooperation. *Bailey v. Universal Underwriters Ins. Co.*, 258 Or. 201, 219 (Or.1970). Oregon courts have found prejudice where an insured's failure to communicate with the insurer led to a default judgment against the insured on liability, and where an insured's failure to attend trial deprived the defense of its only favorable witness. *Bailey*, 258 Or. at

---

**2.** Whether Glacier has adequately pled such a claim in this suit is a matter of dispute and will be addressed elsewhere in this analysis.

220, 221, 474 P.2d 746; *Berry v. Truck Ins. Exch.*, 265 Or. 130, 135, 508 P.2d 436 (Or. 1973). Summarizing these holdings, Judge Mosman writes that under Oregon law "[p]rejudice includes a substantial detriment to the insurer's ability to litigate or adjust the case." *Assurance*, 2008 WL 361289, at *5 (holding, like *Bailey*, that insurer was prejudiced when insured's failure to communicate with insurer led to a default judgment). Judge Mosman's formulation suggests that prejudice can be shown at any stage of the litigation in the underlying suit, even before its conclusion, since an insurer could theoretically prove its "ability to litigate" was impaired even before final resolution of that litigation. But to my knowledge no court applying Oregon law has squarely addressed whether an insurer can prove an insured's non-cooperation caused prejudice *before* the underlying liability action has concluded.

Other jurisdictions confronting this issue hold that a court can only determine whether the insured has been prejudiced *after* the underlying injury action is concluded. *See, e.g., Cincinnati Ins. Co. v. Irvin*, 19 F.Supp.2d 906, 916 (S.D.Ind. 1998) (applying Indiana law and concluding that "the question of prejudice appears impossible to decide before a trial is held in the underlying tort action"); *United Servs. Auto. Ass'n v. Martin*, 174 Cal. Rptr. 835, 836, 120 Cal.App.3d 963, 966 (1981) ("Logically, the required showing of prejudice cannot be made while the main tort action is still pending, its outcome uncertain, and therefore declaratory relief against the injured persons at this stage is inappropriate"); *Harleysville Ins. Co. v. Rosenbaum*, 30 Md.App. 74, 86, 351 A.2d 197, 203 (1976) (vacating trial court's determination of actual prejudice as premature where underlying negligence action had not concluded).

I note, however, that these cases all involved an insured's passive non-respon-

siveness to the insurer, rather than active collusion with the injured party. *See, e.g., Rosenbaum*, 30 Md.App. at 83, 351 A.2d 197 (alleged breach of cooperation clause involved insured's failure to give automobile insurer an account of the accident before he died); *Martin*, 120 Cal.App.3d at 965, 174 Cal.Rptr. 835 (alleged breach of cooperation clause was based on refusal to answer interrogatories, give deposition testimony, or testify at trial). In fact, courts draw a distinction between collusion cases and all others when it comes to the manner and timing of proving prejudice. *See Irvin*, 19 F.Supp.2d at 915–916. In *Irvin*, the district court reasoned that when the insured's alleged failure to cooperate takes the form of failing to appear for trial, the insurer must demonstrate actual prejudice and may do so only after the underlying tort action has concluded. *Irvin*, 19 F.Supp.2d at 915–916. By contrast, *Irvin* noted that courts presume prejudice as a matter of law in cases where the insured "actively colludes with and supports the claim of an injured plaintiff" because the fundamental purpose of a cooperation clause is to prevent such collusion. *Id.* at 914 (citing *Elliott v. Metropolitan Cas. Ins. Co.*, 250 F.2d 680, 684 (10th Cir.1957)).

In *Elliott*, the Tenth Circuit aptly explained the genesis of this distinction. *Elliott*, 250 F.2d at 684. Treating the insured's voluntary unavailability as a breach of the cooperation clause creates a temptation for the insurer to "spirit [the insured] beyond the jurisdiction of the court." *Id.* To counteract that incentive, courts place the burden on the insurer to show that its case was adversely affected by the insured's disappearance. *Id.* Importantly, this special rule does not affect the "established doctrine that the cooperation clause will be deemed violated if the insured by collusive conduct appears to be assisting the claimant in the maintenance of his suit rather than the insurer." *Id.*

Admittedly, *Irvin* and *Elliott's* nuanced explanation stands in some tension with the Oregon Supreme Court's decision in *Bailey,* which purports to create a bright-line rule requiring an insured prove prejudice in all cases. *See Bailey,* 258 Or. at 219, 474 P.2d 746 ("we now expressly recognize the rule that in order for non-cooperation to provide a defense ... the insurance company has the burden to plead and prove that it has suffered prejudice as a result."). But even *Bailey* and the decisions it relies upon never addressed a situation where the insured actively colludes with the injured party. I believe that if the Oregon Supreme Court ever addressed a case like the instant action, it would recognize that active collusion presents an extreme special circumstance where prejudice may be presumed. *Cf. Staples v. Allstate Ins. Co.,* 176 Wash.2d 404, 295 P.3d 201, 209 (2013) (en banc) (although Washington law generally requires an insured prove prejudice, prejudice can be presumed in "extreme cases").

Indeed, requiring the insurer to prove prejudice where the insured is colluding with the injured party creates obvious difficulties. First, as here, the collusion between the insured and injured party can make it hard for the insurer to obtain the proof that would allow it to demonstrate the extent of its prejudice. Second, requiring the insurer to continue providing a defense until after the liability action is resolved to an obviously collusive insured makes a mockery of the cooperation clause, whose purpose is to prevent collusion in the first instance. Finally, where the insured has involved the insurer-retained defense counsel in collusive activities, as here, prejudice to the insurer is virtually guaranteed.

Even without a resolution of the Flathead County action, I conclude as a matter of law that Glacier's willful failure to cooperate prejudices Travelers and Conti-

nental. As explained above, Glacier's collusion presents the extreme case. Not only will Travelers and Continental now have to defend Glacier and other Flathead County defendants (Tygart, Lemons, Interstate) against new damages claims suggested by Glacier itself, but they have incurred legal fees for work by the Datsopolous firm to actually assist Abbey/Land's damages expert and prepare his declaration summarizing the extent of those damages. And Glacier's assertion of a common interest privilege with Abbey/Land prevents Travelers and Continental from even evaluating the extent of Glacier's collusion, which further prejudices insurers. In the face of this overwhelming and undisputed evidence of collusion to the detriment of the insurers, Glacier tellingly offers no plausible factual or legal rebuttal. For the reasons described above, I conclude that Glacier cannot recover as an additional insured under Interstate's insurance policies with Travelers and Continental. *Assurance,* 2008 WL 361289, at *5.

### 4. Impact of This Ruling

My conclusion significantly alters the posture of this case, as explained in more detail below. Because the Travelers and Continental policies do not provide coverage to Glacier, the court must deny Glacier's own motion for partial summary judgment and need not address the insurers' other motions for summary judgment as they apply to Glacier or the various discovery motions concerning discovery requests made by or resisted by Glacier.

### 5. Alternative Ground: Breach of Voluntary Assumption of Obligation Clause

As an alternative basis for summary judgment, Continental argues that Glacier has breached a clause in its Continental policy prohibiting it from voluntarily assuming an obligation without Conti-

nental's consent.[3] (Neal Decl., # 280, Ex. 1 at Section IV(2)(d)) (Providing insured may not "voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.") Specifically, Continental contends that Glacier breached this clause by admitting liability in its answer to Abbey/Land's complaint in the Flathead County case, failing to deny Abbey/Land's prayer, and then seeking a declaratory judgment in the Lake County case asserting that some aspects of liability in the Flathead County case were undisputed. This motion is not fully briefed; nevertheless, I give an overview of the merits to guide the court's future consideration.

First, there appear to be no Oregon cases discussing voluntary assumption of obligation clauses (also known as voluntary payment provisions or consent-to-settle provisions) of the type present in Travelers and Continental's policies. These clauses are fairly common in CGL policies, their purpose being "to give the insurer the ability to control settlement negotiations with the injured party, and to prevent an the [sic] insured party from conspiring with a third party to receive benefits." *Am. Ins. Co. v. Crown Packaging Int'l*, 813 F.Supp.2d 1027, 1033 (N.D.Ind.2011). Continental urges the court to treat the voluntary assumption of obligation clause as a "condition of forfeiture" that nullifies otherwise existing coverage. *See Federated Serv. Ins. Co. v. Granados*, 133 Or.App. 5, 8, 889 P.2d 1312, 1314 (1995) (holding that a consent-to-settlement provision stating "[t]his insurance does not apply to ... [a]ny claim settled without our consent" was a condition of forfeiture). Unlike the consent-to-settle provision in *Granados*, which explic-

itly indicates coverage will no longer apply if a claim is settled without the insurer's consent, the voluntary assumption of obligation clause here makes no reference to nullification of coverage. Rather, the clause appears in the part of the CGL policy entitled "Duties In The Event of Occurrence, Offense, Claim or Suit," along with other duties of the insured towards the insurer. Consequently, the clause at issue here is not a condition of forfeiture, and I decline to apply the burden-shifting proof structure for the "condition of forfeiture" defense set forth in *Lusch v. Aetna Cas. & Surety Co.*, 272 Or. 593, 538 P.2d 902 (1975) and adopted by *Granados*.

Instead, I follow courts from other jurisdictions, which tend to analyze these clauses under the general rubric of the duty to cooperate, reasoning that the purposes of a cooperation and no-voluntary-payment clauses are similar. *See Roberts Oil Co. v. Transamerica Ins. Co.*, 113 N.M. 745, 752, 833 P.2d 222, 229 (1992) ("we do not believe that the policy considerations underlying a voluntary payment provision differ significantly from the policy considerations underlying a cooperation clause.") Thus, I apply the same basic elements of proof for determining whether an insured's breach of such a clause is a complete defense to coverage, examining whether the insured willfully breached the clause and whether the insurer has been prejudiced.[4]

In determining whether the insured breached the clause, courts also draw an important distinction between situations where the insurer unconditionally assumes liability for coverage and those where the insurer defends under a reservation of rights. 14 Couch on Insurance 3d § 199:48. In the first instance, a coopera-

---

**3.** Since the Travelers policies contain exactly the same clause, Continental's argument applies also to Travelers' motion for summary judgment.

**4.** There is no need to examine the first element, since it makes no sense to require the insurer to seek the insured's compliance with a no-voluntary-payment provision.

tion clause prohibiting settlement without the insurer's consent forbids such a settlement. *See United Servs. Auto. Ass'n v. Morris,* 154 Ariz. 113, 116–117, 119, 741 P.2d 246 (1987). However, where the insurer defends under a reservation of rights, an insured can enter into a settlement without the insurer's consent, so long as the agreement is made fairly, with notice to the insurer, and without fraud or collusion on the insurer. *Morris,* 154 Ariz. at 119, 741 P.2d 246. Here, since Travelers and Continental are defending Glacier under a reservation of rights, the voluntary payment clause does not absolutely bar Glacier from entering into a settlement, so long as that settlement satisfies the above requirements.

But the more immediate issue on this motion is whether Glacier's conduct so far even implicates the voluntary assumption of obligation clause. It is undisputed that Glacier has not yet settled the Flathead County action, although Glacier has threatened to stipulate to a judgment. Continental argues, however, Glacier has still breached that clause by admitting liability in Flathead County and seeking to prove its own liability in Lake County. Again, the relevant clause at issue prohibits the insured from "voluntarily mak[ing] a payment, assum[ing] any obligation, or incur[ing] any expense" without the insurer's consent. Glacier did not make a payment to Abbey/Land or incur an expense. Instead, in response to Abbey/Land's allegation that "[d]efendants failed to exercise ordinary skill and diligence and were negligent," Glacier admitted that "the other Defendants herein were negligent" and explained that "[a]ll of Glacier's general contractor work at issue in this case was brokered to subcontractors." (Neal Decl., # 280, Ex. 2 at ¶ 45, Ex. 3 at 1.9). Glacier answered similarly in response to Abbey/Land's allegation that it suffered damages that were directly and proximately caused by Defendants' "wrongful and un-

lawful actions and omissions." (Neal Decl., # 280, Ex. 2 at ¶ 68, Ex. 3 at 1. 18.) Glacier did not respond by either admitting or denying Abbey/Land's prayer that the court enter judgment against all defendants. (Neal Decl., # 280, Ex. 2 at 21–23, Ex. 3.) Neither did Glacier's answer pray to dismiss the claims Abbey/Land alleged against it. (Neal Decl., # 280, Ex. 3 at 4–5.) Finally, in the Lake County action, Glacier takes the position in briefing that several incidents of property damage were caused by Glacier subcontractors, that these incidences qualify as "occurrences" under the relevant policies, and consequently, that undisputed facts create a duty to defend and indemnify. (Neal Decl., # 280, Ex. 6 at 12–13, Ex. 7 at 7–10); (Mot. for Part. Summ. Judg., # 284.)

After looking closely at the complaint and answer in the Flathead County action referenced by Continental, I do not agree with Continental's characterization that Glacier "voluntarily assumed liability and admitted damages" in the Flathead County suit by admitting the liability of its agent subcontractors. It is not certain that Glacier has the authority to concede negligence on behalf of its subcontractors, and until a court finds facts undisputedly establishing the subcontractor's negligence, Glacier's legal conclusion is merely speculative. But even if we assume the subcontractors were negligent, a complex legal question remains concerning whether Glacier can be held vicariously liable for the subcontractor's conduct in this case. Accordingly, Glacier's answer in Flathead County is by no means an admission of its own liability. Meanwhile, Glacier's summary judgment briefing in Lake County takes a position that *presumes* liability will be established against it in Flathead County on some instances of property damage. The briefing might at some later time be considered as a form of estoppel, but the Lake County court has not yet ruled on

Glacier's motions or recognized the estoppel effect of those statements. In sum, Continental (thus far) fails to establish as a matter of law that Glacier has even admitted liability in Flathead County.

Even if Glacier had admitted liability, it is unclear whether that admission constitutes assumption of an obligation in violation of the Continental policy. Authority points in both directions. *Compare State Farm Mut. Auto. Ins. Co. v. Secrist*, 33 P.3d 1272, 1273–1275 (Colo.App.2001) (insured's admission of liability and the amount of damages in response to an attorney's request for admissions, which later led to the court entering judgment, violated an insurance policy clause prohibiting the insured from voluntarily assuming any obligation or expense) *with Blake v. Continental Casualty Co.*, 278 Ill.App. 232, 237 (1934) ("an admission of fault did not amount to an assumption of liability, since it amounted only to an admission of the truth of the fact from which liability might flow, while an assumption of liability brought into existence a contractual obligation."). The more modern rule strikes this court as the better one, but it is by no means established in this jurisdiction. In sum, because Glacier did not admit liability in the Flathead County action, the voluntary assumption of obligation clause in the Continental policies is not triggered.

### B. Glacier's Motion Regarding Certain Occurrences (# 284)

Glacier moves for partial summary judgment against Travelers and Continental seeking a declaration that Montana law applies to the duty to defend and duty to indemnify issues in this case, that the insurers had a duty to defend and breached that duty, and that at least as to one covered occurrence the insurers have a duty to indemnify Glacier from any recovery against it in the Flathead County case. (# 284.) Because I recommend above that the insurers' motion for summary judg-

ment on the cooperation clause issue should be granted, I need not analyze Glacier's own motion for summary judgment since Glacier is barred from asserting coverage under the policies.

### C. Travelers' and Continentals' Motion Regarding Duty to Indemnify Interstate, Tygart and Lemons for Lake County Action (# 222, # 279)

Travelers also moves for partial summary judgment seeking a declaration that it has no obligation to indemnify defendants Interstate, Tygart, or Lemons for any result in the Lake County Action because Glacier's complaint in that action seeks only declaratory relief, not damages for bodily injury or property damage. (# 222.) Continental also joins in this motion. (# 279.) Travelers CGL policies provide:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply....

(McCracken Decl., # 224, Exs. 1–5, 13–16.) Continental policies contain identical operative language. (Neal Decl., # 280, Ex. 1 at Section I(A)(1)(a).) Travelers umbrella policies also provide:

> We will pay on behalf of the insured the "ultimate net loss" in excess of the "applicable underlying limit" which the insured becomes legally obligated to pay as damages because of "bodily injury," "property damage," "personal injury" or "advertising injury" to which this insurance applies.

(McCracken Decl., # 224, Exs. 6–12.) Glacier's most current complaint in the Lake County action seeks a declaration that Tygart, along with all other defendants in that action, owes Glacier a duty to indemnify it from any damages it may be ordered to pay in the Flathead County action as a result of Tygart's and other defendants' negligence. (Berne Decl., # 312, Ex. 1, at ¶¶ 35, 40.) Although Glacier prays for a judgment for damages against insurer defendants in the Lake County action, it only prays for a declaratory relief against Tygart and other non-insurer defendants. (*Id.* at 23–24.)

Travelers apparently argues that under the terms of its policies, it is only required to indemnify an insured for "damages" the insured becomes obligated to pay due to covered "bodily injury" and "property damages." [5] Travelers insists that because Glacier does not seek damages against Tygart, Lemons, and Interstate in the Lake County action, there can be no possible duty to indemnify.[6] Tygart, the only responsive non-moving party, contends that Travelers ignores the practical effect of the Lake County action. If Glacier receives the declaration it seeks in Lake County, Tygart argues, Glacier could use that declaration in a subsequent case as grounds to collect money damages from Tygart for Tygart's breach of the duty to

indemnify. Moreover, Tygart argues that because the Lake County action has not concluded, Travelers cannot meet its burden to show, as a matter of law, that the Lake County action will never expose Tygart to money damages.

I agree with Tygart. Travelers' characterization of the Lake County action is far too narrow. Although Glacier does not now pray for damages against Tygart, it could do so at any time after obtaining a declaratory judgment. Montana law provides for a court to grant "[f]urther relief based on a declaratory judgment or decree" whenever such relief is "necessary or proper." Mont.Code Ann. § 27–8–313. If Glacier prevailed in Lake County, it could subsequently petition for supplemental relief in the form of damages against Tygart. *See, e.g., Pub. Land/Water Access Ass'n v. Jones*, 368 Mont. 390, 300 P.3d 675, 678–79 (2013) (recognizing availability of money damages as form of supplemental relief under Mont.Code Ann. § 27–8–313); *Goodover v. Lindey's Inc.*, 255 Mont. 430, 438, 843 P.2d 765, 770 (1992) (affirming grant of damages as supplemental relief). Indeed, the only reason for Glacier to pursue a declaration of Tygart's duty to indemnify Glacier is so that Glacier can enforce that obligation through a suit for damages.

---

**5.** Travelers also cites two Oregon cases purporting to reinforce that proposition, *General Ins. v. Western Am. Development*, 43 Or.App. 671, 675, 603 P.2d 1245 (1979), and *Holman Erection Co. v. Employers Ins. of Wausau*, 142 Or.App. 224, 231, 920 P.2d 1125 (1996). But neither of these cases addressed whether a declaratory relief action against an insured could expose the insured to covered damages or construed language identical to that found in the Travelers policies.

**6.** Travelers does not move for summary judgment on the duty to defend in Lake County. This omission has little practical effect, however, because the same argument applies equally to both the duty to defend and indem-

nify. A duty to indemnify arises if the insured is liable for harm or injury that is covered by the policy. *Ledford v. Gutoski*, 319 Or. 397, 405, 877 P.2d 80, 85 (1994) (en banc). A duty to defend arises if "the claim against the insured stated in the complaint could, without amendment, impose liability for conduct covered by the policy." *Id.* at 399, 877 P.2d 80. Here, Travelers' argument relies only upon the complaint and insurance policy—rather than facts proven in the Lake County case—and asserts that Tygart, Lemons, and Interstate cannot as a matter of law become liable for any damages, let alone covered damages, because Lake County is a declaratory relief action.

Careful examination of the Travelers' policies reinforces this conclusion. Travelers' policy provides that it has a duty to "pay [*i.e.* indemnify] those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." If Glacier should eventually be found liable in Flathead County, a Lake County court's declaration that Tygart has a duty to indemnify Glacier creates a legal obligation for Tygart to pay Glacier's damages. If Tygart does not pay, then Glacier could and likely would seek damages against Tygart as a form of supplemental relief in Lake County. Assuming Glacier's hypothetical damages in Flathead County arose because of "bodily injury" or "property damages" covered by the policy—that issue being the subject of other dispositive motions in this case—Tygart would, in the language of Travelers' policy, "become[ ] legally obligated to pay" such sums "as damages." The same analysis applies to Travelers' umbrella policies, which contain substantially similar language. In sum, because Travelers cannot establish as a matter of law that the Lake County action will not expose Tygart, Lemons, or Interstate to liability for damages covered under the Travelers policies, Travelers' motion for summary judgment and Continental's joinder in that motion should be denied.

### D. Travelers' Motion Regarding Pre–2007 Policies (# 240)

■ Travelers moves for partial summary judgment regarding the 12 policies—out of 16 total policies—it issued to Interstate for policy periods prior to 2007. Travelers argues that since there are no allegations in any of the underlying matters (the Arbitration, the Flathead County case, or the Lake County case) that property damage *occurred* before 2007, none of the pre–2007 policies provide coverage as a matter of law. But Glacier contends that the pre–2007 policies are still relevant because the negligent conduct that led to the claimed property damage occurred prior to 2007.[7] I agree with Travelers.

The twelve pre–2007 Travelers policies at issue only provide coverage for property damage occurring during the policy period. The primary CGL policies cover bodily injury and property damage only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

(2) The "bodily injury" or "property damage" occurs during the policy period.

(McCracken Decl., # 224, Exs. 1–5, 13–16 at CGL Policies–Contractor, Section I(A)(1)(b).) The umbrella policies for September 2000 to September 2004 apply only to bodily injury or property damage "[o]ccurring during the policy period" and the umbrella policy for September 2004 to September 2005 similarly apply only to bodily injury or property damages that "occurs during the policy period." (McCracken Decl., # 224, Exs. 6–9 at CGL Umbrella Policy, Section I(A)(1)(a)(1)); (McCracken Decl., # 224, Ex. 10 at CGL Umbrella Policy—Section I(A)(1)(a)(ii).)

■ Courts in Oregon construe nearly identical language in CGL policies to require that "[a]ctual injury must occur during the policy period in order to trigger a policy's coverage." *Cal. Ins. Co. v. Stimson Lumber Co.*, No. Civ.01–514–HA, 2004 WL 1173185, at *12 (D.Or. May 26, 2004) (citing *St. Paul Fire & Marine Ins. Co., Inc. v. McCormick & Baxter Creosoting Co.*, 324 Or. 184, 923 P.2d 1200 (Or.1996)). Under this so-called "actual injury" theory of triggering insurance coverage, "cover-

---

**7.** Tygart also joins in Glacier's resistance to the motion for partial summary judgment.

age exists under every policy that was in effect during the time periods in which *damage to property actually occurred,* even if the damage was discovered long after it began." *Stimson Lumber,* 2004 WL 1173185, at *13 (emphasis added).

Travelers demonstrates that all property damage claimed by Abbey/Land in the Flathead County action occurred after 2006. Glacier engaged Interstate starting in 2004 to provide design, advice, analysis and other consulting work relating to the Shelter Island construction project. (Jack Decl., # 193, Ex. 2, ¶¶ 16–26 (Flathead County Second Amend. Compl.).) In June 2006, Interstate entered into another subcontract with Glacier to provide more engineering, design, and labor. (*Id.* at ¶ 24.) But no property damage arising from Interstate's activities occurred until 2007. Illegal releases from a water treatment system into the septic system "first occurred in 2007" and continued "in subsequent years." (*Id.* at ¶¶ 26–27.) Wastewater was illegally released on October 28, 2008 and later contaminated a well. (*Id.* at ¶ 29.) A heat pump system that Interstate designed and installed violated discharge permits when it failed soon after becoming operational in the winter of 2009. (*Id.* at ¶¶ 30–31); (Steinbeck Decl., # 272, ¶ 7.)

Glacier does not dispute that the none of the property damage at issue occurred before 2007. Yet Glacier argues that because pre–2007 Travelers policies covered Interstate for so-called "means and methods" advice that Interstate provided to Glacier starting as early 2003, and because that advice contributed to the property damage, the pre–2007 policies should "remain on the risk." (Resp. Br., # 270, at 6.) Glacier, however, provides no authority supporting that position. Nor does Glacier even comment on *Stimson Lumber* and *McCormick,* which Travelers discussed at

length in its opening brief and which unambiguously refute Glacier's argument. Travelers' motions should be granted as to policies for periods before 2007.

**E. Travelers' and Continentals' Motion Concerning "Occurrence," "Property Damage," Business Risk Exclusions, and Professional Liability Exclusion (# 256, # 279)**

Travelers and Continental[8] move for partial summary judgment seeking a declaration that the Travelers policies do not provide coverage to Glacier, Tygart, Lemons, or Interstate for damages sought or awarded in either the Arbitration or the Flathead County case resulting from either (1) the "repair, replacement, completion or improvement" of work performed by Interstate on the Shelter Island project, or (2) the design and engineering services performed by and for Interstate. (Memo. in Supp., # 257, at 27.) It seems that Travelers essentially seeks a declaration that it has no duty to indemnify defendants for any damages whatsoever flowing from the Arbitration or the Flathead County liability case. Tygart has joined Glacier in its opposition to this motion. (Joinder, # 305.) Because I recommend summary judgment be entered declaring that Glacier's breach of the cooperation clause completely bars coverage, this motion is moot as to Glacier and Glacier's briefing therefore applies only to Tygart's resistance.

Initially, Tygart raises several procedural concerns with Travelers' motion. Tygart asserts that Travelers' motion is premature because the Flathead County action—which Tygart deems the only "underlying matter"—has not yet advanced to trial and therefore no facts have been conclusively established upon which to base a

---

**8.** Even though both Travelers and Continental move for summary judgment, for simplicity I refer to Travelers or insurers when discussing this motion.

coverage determination. Likewise, Tygart asserts that litigating coverage now has placed him in a conflictive position by forcing him to prove facts to demonstrate coverage that undermine his position on liability. Tygart also reiterates a claim raised previously in this litigation that the action must be dismissed because all necessary parties have not been joined.

Concerning the merits, Travelers first argues that damages sought by Abbey/Land in the Arbitration and Flathead County were not caused by "occurrences," which are defined in the policies as "accidents," because under Oregon law a subcontractor's faulty workmanship or defective design is considered a breach of contract, not an accidental occurrence covered under commercial liability policies. Tygart responds that governing Montana law defines "accident" to include any event that is not expected or intended, which can indeed include damages resulting from faulty workmanship. Next, Travelers contends that damages for the repair, replacement, or redesign of Interstate's own faulty work is not considered "property damage" covered by the policies under Oregon law. Tygart insists that he does not seek indemnity for repair or replacement of Interstate's own defective work, but rather only for damages to other contractors' work or to other aspects of the owner's property caused by Interstate's negligence, which qualify as "property damage" under the policies. Last, Travelers argues that the business risk exclusions and the design and professional exclusions in the policies exclude coverage for damages claimed in the Arbitration and Flathead County. Tygart counters that none of these exclusions apply to his indemnity claims.

The above summary raises a preliminary conflict of law issue that must be resolved before addressing the substance of Travelers' motion. That issue would require the court to first determine whether there is an actual conflict between Montana and Oregon law concerning the interpretation of the terms "accident" and "property damage" in CGL policies, and if so, determine which forum (Oregon or Montana) has the most significant relationship to this dispute. Unfortunately, the parties' choice of law arguments are spread in bits and pieces throughout many different filings, making the analysis even more challenging. (# 54, at 8; # 270, at 2–5; # 273, at 3–5; # 284, at 10–15; # 294, at 3; # 298, at Sub. "D") (Glacier's choice of law arguments); (# 83, at 16); (# 106, at 3–4) (Travelers' choice of law arguments). However, the present motion for summary judgment can be disposed of on procedural grounds without reaching the substantive arguments or the conflict of law analysis that goes along with them.

### 1. Background

Travelers complaint prays for a declaration that it has no duty to defend or indemnify defendants Glacier, Tygart, Lemons, or Interstate for any of the underlying matters, which include the concluded Arbitration, the Flathead County action, and the Lake County action. The present motion, however, pertains only to the duty to indemnify rather than the duty to defend. This is a crucial distinction. "The duty to defend is triggered by the bare allegations of a pleading." *Northwest Pump & Equip. Co. v. Am. States Ins. Co.,* 144 Or.App. 222, 227, 925 P.2d 1241 (1996). Thus, "[i]n evaluating whether an insurer has a duty to defend, the court looks only at the facts alleged in the complaint to determine whether they provide a basis for recovery that could be covered by the policy." *Ledford v. Gutoski,* 319 Or. 397, 400, 877 P.2d 80, 82 (1994). By contrast, "the duty to indemnify is established by proof of actual facts demonstrating a right to coverage." *Northwest Pump,* 144 Or.App.

at 227, 925 P.2d 1241. Consequently, "[e]ven when an insurer does not have a duty to defend based on the allegations in the initial complaint, the facts proved at trial on which liability is established may give rise to a duty to indemnify if the insured's conduct is covered." *Ledford,* 319 Or. at 403, 877 P.2d 80. The important distinction is that determining the existence of a duty to indemnify requires the court to examine *facts,* whereas determining the existence of a duty to defend requires the court to examine *pleadings.*

■ Courts typically determine the duty to indemnify only after the underlying liability action has been completed. In that scenario, the court decides whether an insurer has a duty to indemnify its insured by looking to the evidence submitted at trial in the underlying liability case to determine whether the judgment was based on a claim covered under the insurance policy at issue. *See Ohio Cas. Ins. Co. v. Ferrell Developments, LLC,* No. 3:10–CV–162–AC, 2011 WL 5358620, at *5 (D.Or. July 27, 2011) (citing *Mutual of Enumclaw Inc. Co. v. Gass,* 100 Or.App. 424, 428, 786 P.2d 749 (1990)). Consequently, in some instances district courts find it premature to consider summary judgment motions on the duty to indemnify before the underlying liability action has been completed. *See Country Mut. Ins. Co. v. Larson,* No. 08–6154–TC, 2010 WL 1039790, at *5 (D.Or. Feb. 26, 2010) ("As the operative complaints in the underlying state action make no reference to any act that would invoke coverage . . . and as no judgment against [the insured] has been obtained, [a motion for summary judgment] is certainly not ripe on the indemnity issue and is tantamount to a request for an advisory opinion."); *Evraz Or. Steel Mills, Inc. v. Cont'l Ins. Co.,* No. CV 08–447–JE, 2009 WL 789658, at *11 (D.Or. Mar. 20, 2009) ("At this point, the parties do not know what obligations will be assigned to [insured] in the underlying actions, or what

the bases of those obligations will be. In the absence of that knowledge, it appears that resolution of many of the indemnity issues is not possible."); *Travelers Prop. Cas. Co. of Am. v. Martella,* No. CV–04–176–ST, 2004 WL 1375283, at *6 (D.Or. June 18, 2004) ("[t]he indemnity issue must await resolution of the liability issue").

■ But there is also no black-letter rule prohibiting a court from determining the duty to indemnify issue while the underlying liability action is still in progress. *See Allstate Ins. Co. v. Staten,* No. 07–125–CL, 2007 WL 3047219, at *3 (D.Or. Oct. 17, 2007) ("Defendant has not cited and the court cannot find any case holding that the indemnity issue cannot possibly be resolved prior to the completion of the underlying action."). Rather, the court must consider whether resolving the duty to indemnify might require the court to make factual determinations that are contested in the underlying liability action; if so, the federal court should not address indemnity until the state court action has finished. *Allstate Ins. Co. v. Westom,* No. 07–1265–AA, 2008 WL 441726, at *2 (D.Or. Feb. 14, 2008).

■ Two other interrelated doctrines also inform this analysis. First, Oregon courts recognize that when the underlying tort action is still underway, it is appropriate to stay a simultaneous coverage action determining the duty to indemnify if the coverage action places the insured in "the conflictive position" of being required to abandon its denial of liability in the underlying liability case in order to demonstrate coverage. *North Pacific Ins. Co. v. Wilson's Distributing Service, Inc.,* 138 Or. App. 166, 175, 908 P.2d 827 (1995). For example, in *North Pacific,* a property owner sued the insured for contaminating the property, but in the coverage action the insurer argued that a pollution exclusion in

the policy barred coverage. To demonstrate coverage, however, the insured would be required to show that the sudden and accidental release exception to the pollution exclusion applied. To do so the insured would have to present evidence that it caused some of the contamination, but that the pollution resulted from a sudden and accidental release. The Court concluded that "[a]n insurer may not put its insured in that position." 138 Or.App. at 175, 908 P.2d 827. Subsequently, federal courts have invoked *North Pacific* as the reason to stay a coverage action until the underlying liability suit finishes. *See, e.g.* *Martella*, 2004 WL 1375283, at *6; *Evraz*, 2009 WL 789658, at *11; *but see Home Indemnity Co. v. Stimson Lumber Co.*, 229 F.Supp.2d 1075 (D.Or.2001) (creating an exception to *North Pacific* where insured's conflictive situation can be addressed by ensuring that factual determinations made in the coverage action are not given collateral estoppel effect in the underlying liability action).

■■■ The second doctrine is the federal court's discretion not to exercise declaratory relief jurisdiction when doing so would require needless determination of state law issues, encourage forum shopping, or create duplicative litigation. *See Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942). I discussed this principle at length in my previous Findings and Recommendation in this case, explaining that if the present coverage action required the court to engage in fact-finding that duplicates factual determinations at issue in the Flathead County case, I would likely decline the exercise of declaratory relief jurisdiction until the Flathead County action finished. (F & R, # 120, at 35–36.) Other courts have relied on a similar justification for staying coverage litigation. *See, e.g., Travelers Indem. Co. v. McLaughlin*, No. 09–1178–TC, 2010 WL 785976, at *2–3 (D.Or. Feb. 26, 2010). These two doc-

trines guide my analysis of Travelers' motion.

Before going any further, it is important to note that Travelers seeks a declaration concerning coverage for all the "Underlying Matters," which include the Arbitration, the Flathead County action, and the Lake County action. (Fourth Amend. Compl., # 154, ¶ 1(c).) Travelers lumps them together in briefing, both by speaking of the Underlying Matters generally, and by equating the claims and facts at issue in the Arbitration with those at issue in Flathead County. By contrast, Glacier (and by extension Tygart) views Flathead County as the only underlying matter. Since Travelers' complaint defines the scope of the requested declaration, I therefore address each matter for the purposes of this motion.

### 2. Flathead County

■■■ I begin with the Flathead County action, since that is the most contentious. As an initial matter, in this declaratory judgment action and on this motion, Travelers bears the burden to prove that it has no duty to indemnify defendants. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (moving party bears the burden to show the absence of a genuine issue of material fact); *First National Bank v. Malady*, 242 Or. 353, 358, 408 P.2d 724, 726 (1966) (insurer filing declaratory judgment action has the burden of proving noncoverage). Thus, to prevail on this motion, Travelers must present undisputed actual facts demonstrating there is no right to coverage. *Northwest Pump*, 144 Or.App. at 227, 925 P.2d 1241. Travelers cannot meet this burden for several reasons.

■■■ First, although Travelers discusses many "facts" in its briefing, Travelers predictably presents few undisputed or adjudicated facts concerning the nature of the defendants' conduct at the Shelter Is-

land construction project. This is not surprising, because almost no discovery has occurred in the Flathead County and that action has not reached trial. Instead, Travelers asks the court to determine that Abbey/Land's pleadings in the Flathead County action preclude a duty to indemnify because they seek damages for behavior that was already litigated in the Arbitration under a breach of contract theory, and therefore that the Flathead County action cannot possibly impose liability for covered occurrence, which requires accidental conduct akin to negligence. But Travelers' whole approach is misguided. Travelers does not and cannot predict what facts will be shown at trial in Flathead County regarding the nature of Tygart's conduct in that case and the resulting damages, especially because Tygart (by way of his joinder to Glacier's response) identifies various incidents that he asserts constitute accidental occurrence causing property damage covered under the Travelers policies. (Resp., # 298, at 22–24.) Instead, Travelers resorts to characterizing the "gravamen of the Flathead [second amended complaint]" as Interstate's failure to comply with its subcontract causing damage to Interstate's own work, insisting that "the matters complained of" cannot qualify as "occurrences" and therefore cannot confer coverage under the policies. (Memo. in Supp., # 257, at 13–14.) This, at its heart, is an argument against the duty to defend masquerading as an argument against the duty to indemnify. *Cf. Ledford,* 319 Or. at 400, 877 P.2d 80 ("[i]n evaluating whether an insurer has a duty to defend, the court looks only at the facts alleged in the complaint to determine whether they provide a basis for recovery that could be covered by the policy").

◼ Travelers' other arguments similarly rely on the Flathead County pleadings, rather than undisputed facts. Travelers argues that the damages "sought in the Flathead County action are not 'property damage' covered by the Travelers policies." (Memo. in Supp., # 257, at 14.) Again, since no damages have been assessed in Flathead County, Travelers cannot present those damages to compare them against the policy language. The same goes for Travelers' contentions about policy exclusions, which seek to compare "claimed" damages in Flathead County against various policy exclusions. (*Id.* at 17–27.) Oregon cases teach that even if pleadings in the underlying action do not indicate the possibility of coverage, a duty to indemnify may still exist based on "the facts proved at trial" concerning the insured's conduct. *Ledford,* 319 Or. at 397, 877 P.2d 80 (citing *City of Burns v. Northwestern Mutual,* 248 Or. 364, 368–369, 434 P.2d 465 (1967)). These cases recognize the reality that pleadings can be amended throughout a liability proceeding, and therefore the facts ultimately proven at trial are the only reliable measure of whether certain damages are covered under relevant policies.[9] Because Travelers cannot establish as a matter of law that Tygart will not be found liable for covered damages, Travelers' motion should be denied.

Even if Travelers had presented some undisputed facts about Tygart's conduct, I would recommend denying its motion without prejudice and staying the present ac-

---

9. However, when pleadings in the underlying action are also supported by undisputed facts, the duty to indemnify can be properly determined even before final resolution. Travelers' motion for partial summary judgment concerning the pre–2007 policies presents this exact scenario. The pleadings allege property damage first occurred in 2007, and Glacier and Tygart concede that fact. Whatever the outcome of the Flathead County action, it is assured that defendants will not be found liable for damage occurring prior to 2007.

1218

tion under *North Pacific* until the Flat-head County case is completed. It is clear that Travelers' present motion places Tygart in the conflictive position of having to develop facts to show coverage in this suit that would undermine his position in the Flathead County liability action. Even without deciding whether Montana or Oregon law will apply to construing the Travelers' policies, it is evident that Tygart must at least present evidence that Interstate's conduct consisted of an "occurrence"—an accident—causing "property damage" in order to resist the motion. Of course, in the Flathead County action Abbey/Land alleges that Tygart, as well as the other defendants, committed negligence that caused damage to property. The crux of the Flathead County action will therefore be whether Tygart and the other defendants' actions were negligent, and if so, whether that conduct caused damage. The overlap is plain—to demonstrate coverage here, Tygart must abandon his denial of liability in Flathead County. *North Pacific* speaks to precisely this dilemma.[10] Moreover, it would not be appropriate to apply the "no estoppel" remedy proposed by *Stimson Lumber* as an alternative to staying the action. In that case, the court recognized that factual disputes in the coverage case would have "little or no impact on issues likely to be seen in the underlying claims." 229 F.Supp.2d at 1080. By contrast, here the issues squarely overlap. This coverage question must be stayed.

Finally, even if *North Pacific* did not require this result, I would decline to exercise declaratory relief jurisdiction and stay the matter anyway. Given that I cannot resolve the indemnity issue as a matter of law, the next step would be for this court to move towards trial. A trial in this case would involve fact-finding to determine whether defendants' conduct at the project was negligent (and therefore "accidental") and whether it caused certain types of covered damages—this is essentially a case-within-the-case duplicating that fact-finding that would normally occur in the liability action. And it is precisely the type of needless determination of state law issues that counsels against exercising declaratory relief jurisdiction. *Gov't Employees Ins. Co. v. Dizol*, 133 F.3d 1220, 1225 (9th Cir.1998) (urging district courts to "avoid needless determination of state law issues"). In sum, Travelers' motion for summary judgment is premature. The motion should be denied, and the action (as it concerns the duty to indemnify for the Flathead County action) should be stayed while the Flathead County case proceeds.

### 3. Arbitration

Unlike the Flathead County case, the Arbitration has already ended, and is memorialized by a written arbitration award making certain findings of fact. Moreover, the court's concerns about placing any defendant in a conflictive position and interfering with state court decision-making do not apply. But Travelers' complaint only seeks a declaration concerning the Arbitra-

**10.** When responding to Glacier's original invocation of *North Pacific* in it's motion to stay (# 211), Travelers argued that *North Pacific* was inapplicable because Glacier did not seek to stay both pending coverage actions—the federal action and the Lake County action. Thus, Travelers insisted that Glacier could not "avail itself of *North Pacific's* logic." (Resp., # 236, at 9.) Given my conclusion above that Glacier cannot seek coverage under the Trav-

elers' policies, only Tygart remains to resist Travelers' declaration. While Tygart has not moved to stay the Lake County action, he has moved to dismiss Glacier's complaint in that action. (Berne Decl., # 265, ¶ 6.) Therefore, it cannot be said that Tygart is complaining of the conflict caused by this federal coverage litigation while proceeding with factual determinations in Lake County.

tion as to Interstate, presumably because Interstate was the only party against whom damages were awarded in the Arbitration. Accordingly, the court must deny Travelers' motion for summary judgment to the extent that it seeks a declaration that Travelers has no duty to indemnify Tygart or Lemons for damages awarded in the Arbitration. No such damages were awarded against Tygart or Lemons.

#### 4. Lake County

None of the parties address the effect of Travelers' current motion on the Lake County action, not even Travelers.[11] But since the Lake County action attempts to adjudicate coverage disputes based on the underlying Flathead County action, it makes sense that Travelers' motion is premature as to Lake County as well, for all the same reasons it is premature with regards to Flathead County liability. This aspect of Travelers motion should be denied.

### F. Travelers' Motion Concerning the Pollution Exclusion (# 334)

██ Travelers moves for partial summary judgment seeking a declaration that it has no duty to defend or indemnify defendants Glacier, Tygart, Lemons, or Interstate against claims for alleged property damage from: (1) alleged e-coli bacteria contamination from the discharge of sewage; or (2) alleged improper or illegal discharge of water softening chemicals, salts and minerals, because any such alleged property damage is excluded by the pollution exclusion contained in the Travelers' policies. (Memo. in Supp., # 335, at 2.) Tygart has joined Glacier in its opposition to this motion. (Joinder, # 347.) Because I recommend summary judgment be entered declaring that Glacier's breach of the cooperation clause completely bars

coverage, this motion is moot as to Glacier and Glacier's briefing therefore applies only to Tygart's resistance.

Travelers frames the issues to be resolved by this motion as follows: (1) Do certain allegations by Abbey/Land in its Second Amended Complaint in the Flathead County case involve "pollutants" as defined in the Travelers policies? And, if so, (2) were the pollutants allegedly released or discharged at or from any premises used for handling, storage, disposal, processing or treatment of waste? For purposes of their "pollutant" exclusion argument, Travelers focuses solely on damage caused to the drain field and water well stemming from the "illegal" discharge of sewage and water softener chemicals.

Tygart ultimately contends that it is impossible to determine conclusively the absence of coverage until facts are proved in the Flathead County case. Tygart also again argues that to defend its coverage in this case, it has to make out its own liability in the Flathead County case. I agree with Tygart for the same reasons discussed in Section E above. Accordingly, this motion should be denied.

### G. Travelers' Motion Concerning 2009 to 2011 Policies (# 331)

██ Travelers moves for partial summary judgment regarding the four policies it issued to Interstate for policy periods in 2009, 2010 and 2011. Travelers argues that the property damage alleged in the underlying matters either did not occur during the policy periods covered by these policies, and/or the insured knew of the damage, in whole or in part, prior to the start of these policies. Specifically, Travelers argues there is "clear evidence" that the drain field was destroyed in October

---

11. Although Travelers seeks summary judgment declaring its policies provide no coverage for any of the Underlying Actions—which

includes Lake County—Travelers never refers to Lake County specifically or explains how any pleadings or facts dictate that result.

2008, and Interstate knew it was destroyed.

Tygart again joins Glacier in its response. Tygart argues that additional chemicals were discharged to the drain field in 2009, and additional sewage waste containing e-coli bacteria was discharged to the water well on the property in 2009. There are other sub-arguments related to coverage as to the 2009–2011 policies, but they are of a similar tin. They are premised on whether the damage occurred solely in 2008, or whether the damage was ongoing and continued into 2009. They are also premised on who knew what, and when did they know it. Travelers contends there is undisputed evidence in the record to resolve all those issue. Tygart contends these are they types of underlying factual matters that should be resolved in the Flathead County case where all the relevant players are parties to the suit. I again agree with Tygart that there are factual matters that may develop in the Flathead County case that could affect the question of coverage between 2009 and 2011. Accordingly, this motion should be denied.

## II. Motions to Stay

■ Before the court are three different motions to stay, two by Glacier (# 211, # 273) and one by Tygart (# 263.) Because I recommend granting summary judgment against Glacier on the coverage issue, Glacier's motions (# 211, # 273) to stay should be denied as moot. Tygart's motion to stay, however, still must be resolved. Tygart argues that the court should stay this action until full resolution of the Flathead County and Lake County cases, or until resolution of Tygart's motions to dismiss and for summary judgment in those cases. For the reasons discussed in Section E above, I agree that this action should be stayed pending completion of the Flathead County action. A stay is appropriate because Tygart has

been placed in a conflictive position by having to litigate coverage simultaneous to underlying liability and because this court should decline to exercise declaratory relief jurisdiction until the Flathead County action finishes. Tygart does not persuasively explain why this court must wait until the Lake County action is resolved. Accordingly, his motion to stay (# 263) should be granted in part and denied in part, and the action against him should be stayed until resolution of the Flathead County case.

## III. Motion to Amend

Glacier moves for leave to amend its complaint to allege a claim for attorney fees if it is the prevailing party. (# 216.) Because I recommend that the court declare Glacier possesses no coverage under the relevant policies—the opposite of Glacier's requested relief in this declaratory judgment action—it would be futile to allow Glacier to amend its complaint to seek attorney fees as a prevailing party. Accordingly, Glacier's motion for leave to amend its complaint should be denied.

## IV. Discovery Motions

The discovery motions now before the court essentially concern seven different topics: (1) the scope of Glacier's 30(b)(6) deposition of Continental (# 183); (2) the permissibility of communications between Glacier's counsel and Continental's claims adjuster Louis Hansen concerning Continental's handling of Glacier's defense in the Flathead County case and the relevance of Continental's coverage counsel's communications with Hansen (# 200, # 226); (3) the potential privilege for communications between Abbey/Land and Glacier (# 191, 196); (4) the discoverability of communications between the insurers (Travelers and Continental), their insured (Interstate), and certain third parties (# 198, # 206); (5) the validity of Glacier's subpoena to take Anchor Insurance &

Surety's 30(b)(6) deposition (# 260); (6) the permissibility of Glacier's proposed deposition of Travelers' claims handler Matthew Williams (# 276); and (7) Glacier's Rule 56(d) request to continue summary judgment motions for lack of necessary discovery and supplemental motion to compel outstanding discovery responses (# 282). I will address the two motions that ultimately inform why the remaining motions should be denied as moot.

### A. Glacier's Rule 56(d) Motion and Supplemental Motion to Compel (# 282)

■ Glacier argues that the court should not resolve these pending summary judgment motions until ruling on the pending discovery motions and allowing outstanding discovery to be completed. Because I recommend the court grant the insurers' motion for partial summary judgment against Glacier for breach of the cooperation clause and deny the other summary judgment motions, Glacier's 56(d) request can only succeed if outstanding discovery is needed to oppose the cooperation clause motion. Rule 56(d) provides:

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
>
> (1) defer considering the motion or deny it;
>
> (2) allow time to obtain affidavits or declarations or to take discovery; or
>
> (3) issue any other appropriate order.

Fed.R.Civ.P. 56(d). To establish that a continuance is needed to obtain facts essential to oppose summary judgment, a nonmovant must show: (1) that it has identified in an affidavit or declaration the specific facts it hopes to elicit from further discovery; (2) that these facts sought exist; and (3) that these facts are "essential" to resist the summary judgment motion. *Cal. on Behalf of Cal. Dep't of Toxic Substances Control v. Campbell*, 138 F.3d 772, 779 (9th Cir.1998) (interpreting Rule 56(f), which was redesignated as Rule 56(d) during the 2010 Amendments to the civil rules).

■ Here, Glacier cannot meet any of these three elements with regards to the cooperation clause summary judgment motion. Glacier's declaration lists many outstanding discovery requests and depositions, but does not identify any *specific facts* that it hopes to elicit, let alone show that such facts exist. Glacier does seek information related to the insurers' engagement and provision of defense counsel, which are at issue in several discovery motions before this court. (# 226, # 276.) But Glacier has not even attempted to show how that information is essential to resist the cooperation clause summary judgment motion, which examines Glacier's own failure to cooperate, not the insurers' unrelated conduct in coordinating Glacier's defense. Indeed, as I mentioned above, discovery concerning insurers' provision of a defense in Flathead County is relevant only to a bad faith claim, and as I discuss more below, Glacier has not satisfactorily pled such a claim in this action. Glacier's Rule 56(d) motion (# 282) should be denied.

### B. Continental's Motion to Limit the Scope of Deposition (# 183) and Glacier's Purported Bad Faith Claim

■ Continental's motion (# 183) seeking to limit the scope of Glacier's 30(b)(6) deposition of Continental, arguing, among other things[12], that various

---

**12.** Since I recommend above that Continental's summary judgment motion against Glacier be granted (with a few caveats already explained), I focus here on aspects of these discovery disputes that may still be alive even

deposition topics pertaining to Continental's defense investigation and claims handling are irrelevant to Glacier's claims. Continental argues that Glacier has not pled either a contractual or extra-contractual bad faith failure to defend claim in this action, alleged facts supporting such a claim, nor prayed for damages due to breach of a duty to defend. By contrast, Glacier asserts in briefing that it is "seeking extra contractual claims from [Continental] for initially appointing inadequate counsel to defend Glacier and for failing to Pay Glacier's insurance defense costs...." (Resp., # 188, at 7.) This motion therefore raises the important threshold issue of whether Glacier has actually pled a bad faith claim, the resolution of which affects other disputes in this case.

I find that Glacier has not pled a bad faith claim. Glacier's counterclaims against Travelers and cross-claims against Continental state only that "Glacier asserts all contractual and extra contractual claims [Glacier] has pursuant to Montana and other applicable law." (Answer, # 173, ¶ 16.) Glacier does not allege any facts pertaining to the insurers' initial retention of inadequate defense counsel or failure to pay replacement defense counsel, although Glacier has discussed these incidents in briefing on several different motions. Nor does Glacier pray for a declaration that the insurers breached a duty to defend in good faith or committed tortious breach of the covenant of good faith and fair dealing, two potential formulations of a bad faith claim against an insurer. Similarly, Glacier does not pray for damages associated with the insurers' potential bad faith. While Glacier has moved to amend its answer to assert a counterclaim and

cross-claim for attorney fees (# 216), Glacier has not sought leave to explicitly plead a bad faith claim. Finally, unlike Travelers and Continental which are allowed under the federal rules to raise their cooperation clause claims for the first time on summary judgment in the absence of a showing of prejudice, Glacier's bad faith claim is being raised in the context of discovery motions.

Glacier's current pleading does not satisfy federal requirements to plead a bad faith claim.[13] To state a claim for relief, a pleading must contain a statement of the court's jurisdiction, "a short and plain statement of the claim showing that the pleader is entitled to relief" and "a demand for the relief sought...." Fed.R.Civ.P. 8(a). Rule 8 requires that the pleading give the defendant "fair notice of what the ... claim is and the grounds on which it rests." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (internal citations and quotations omitted). The pleading need not state the legal basis of the claim, so long as the facts alleged give fair notice of the claim. *See Alvarez v. Hill,* 518 F.3d 1152, 1157 (9th Cir.2008). Glacier's pleading in this case does not satisfy this permissive standard. Alleging that Glacier "asserts all contractual and extra contractual claims" without any accompanying factual content cannot put the parties on fair notice of a bad faith claim. This type of placeholder pleading violates Rule 8. If Glacier wishes to take discovery in this action to support a bad faith claim, it must first plead such a claim. Continental's motion to limit discovery (# 183) should be granted.

after the coverage dispute concerning Glacier is resolved.

**13.** Although a bad faith claim would presumably be based on state law, the manner in

which that claim must be pled is governed by federal rules. *See Taylor v. United States,* 821 F.2d 1428, 1433 (9th Cir.1987).

## C. Remaining Discovery Motions

The remaining discovery motions are not relevant to the cooperation clause motion, and having determined Glacier has not pled a bad faith claim, are not relevant to any remaining issues in the case. As a result, the remaining discovery motions (# 191, # 196, # 198, # 200, # 206, # 226, # 276) should be denied as moot.

## CONCLUSION

For the foregoing reasons: (1) Travelers' motion for partial summary judgment against Glacier for breach of the cooperation clause (# 238) and Continental's joinder in that motion (# 281) should be granted; (2) Glacier's motion for summary judgment regarding certain occurrences (# 284) should be denied; (3) Travelers' motion for partial summary judgment regarding the duty to indemnify for the Lake County action (# 222) and Continental's joinder in that motion (# 279) should be denied; (4) Travelers' motion for partial summary judgment regarding pre-2007 policies (# 240) should be granted; (5) Travelers' motion for partial summary judgment concerning "occurrence," "property damage," and various exclusions (# 256) and Continental's joinder in that motion (# 279) should be denied; (6) Travelers' motion for partial summary judgment based on the pollution exclusion (# 334) should be denied; (7) Travelers' motion for partial summary judgment as to Travelers 2009 to 2011 policies (# 331) should be denied; (8) Glacier's motions to stay (# 211, # 273) should be denied; (9) Tygart's motion to stay (# 263) should be granted; (10) Glacier's motion to amend (# 216) should be denied; (11) Glacier's Rule 56(d) Motion and Supplemental Motion to Compel (# 282) should be denied as moot; (12) Continental's Motion to Limit Scope of Deposition (# 183) should be granted; and (13) the following discovery motions should be denied as moot (# 191, # 196, # 198, # 200, # 206, # 226, # 276).

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due fourteen (14) days from service of the Findings and Recommendation. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due fourteen (14) days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

IT IS SO ORDERED.